956 So.2d 758 (2007)
STATE of Louisiana, Appellee
v.
Terry Glen HILL, Appellant.
No. 42,025-KA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 2007.
*760 William J. Franklin, for Appellant.
Terry Glen Hill, Pro Se.
Paul J. Carmouche, District Attorney, John F. McWilliams, Jr., Edward M. Brossette, Geya D. Williams Prudhomme, Assistant District Attorneys, for Appellee.
Before WILLIAMS, GASKINS and DREW, JJ.
WILLIAMS, J.
A Caddo Parish grand jury returned an indictment charging the defendant, Terry Glen Hill, with the second degree murder of Eric George, a violation of LSA-R.S. 14:30.1. Following a jury trial, the defendant was found guilty as charged and was sentenced to life in prison at hard labor without benefit of probation, parole or suspension of sentence. For the reasons that follow, we affirm the defendant's conviction and sentence.

FACTS
On June 28, 2005, a group of men, including the defendant and George, gathered behind a liquor store on Blanche Street, in Shreveport, Louisiana, to play dominoes. At some point during the evening, the defendant left the scene and returned carrying a hollow metal pipe, approximately four feet long. At that time, George was seated at a table playing dominoes with his back to the direction from which the defendant approached. The defendant spoke to George, and when George stood up and began to turn around to face the defendant, the defendant struck him on the side of the head with the metal pipe.
It is not entirely clear from the testimony what precipitated the attack. The testimony indicated that George had somehow obtained a watch belonging to the defendant and apparently had refused to return it. None of the witnesses who were present during the attack had knowledge of any serious disagreement between George and the defendant. George and the defendant were described as being friends of each other, and the defendant's attack upon George was unexpected.
William Jackson was one of the witnesses to the incident. He testified that he was seated at the table playing dominoes when he heard the defendant state, "I'm going to get mine." The defendant left the scene and returned a while later carrying a metal pipe. He stated that the defendant approached George from behind *761 and "just drew back and hit him like he was trying to knock a home run." Similarly, George's brother, Darrell Washington, testified that the defendant's swing was "more like hitting a baseball." Another witness, Gary Mitchell, testified that the defendant swung "like he was trying to hit a ball."
Immediately after the attack, Washington said something to the defendant about striking George, and the defendant began swinging the pipe at Washington. Washington managed to raise his arm, presumably to avoid being hit on the head, and was struck on the arm.
After striking Washington, the defendant approached George, who was lying unconscious on the ground. He took the watch from George's arm and fled the scene.
George was transported to Louisiana State University Health Sciences Center, where tests revealed that he had suffered a subarachnoid hemorrhage. He was placed on life support and never regained consciousness. He was pronounced dead on July 2, 2005. The coroner determined the cause of George's death was "acute myocardial ischemia" and "severe closed-head injuries."
The defendant was arrested on July 11, 2005. After signing a waiver of rights form, he gave a recorded statement in which he admitted that he struck George with the pipe. A Caddo Parish grand jury returned an indictment charging the defendant with second degree murder. Following a jury trial, the defendant was found guilty as charged. The trial court denied the defendant's "Motion for Post Verdict Modification of Verdict" and sentenced him to life in prison at hard labor without benefit of probation, parole or suspension of sentence. This appeal followed.

DISCUSSION
Sufficiency of the Evidence
In his first assignment of error, the defendant contends the evidence was insufficient to prove guilt of the offense of second degree murder beyond a reasonable doubt. Specifically, he argues that there was no evidence of robbery or specific intent to kill or inflict great bodily harm. He further contends sufficient provocation existed to negate specific intent.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992).
The standard of appellate review for a sufficiency claim, as set forth in Jackson v. Virginia, supra, is now legislatively embodied in LSA-C.Cr.P. art. 821. This standard does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. The reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, *762 writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
LSA-R.S. 14:30.1 provides, in pertinent part:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2)(a) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, second degree kidnapping, aggravated escape, assault by drive-by shooting, armed robbery, first degree robbery, second degree robbery, simple robbery, cruelty to juveniles, second degree cruelty to juveniles, or terrorism, even though he has no intent to kill or to inflict great bodily harm.
* * *
In this case, there is no contention that the defendant was engaged in the perpetration of a robbery or any of the other felonies enumerated in LSA-R.S. 14:30.1(A)(2)(a) at the time of the offense. Thus, no further discussion of the defendant's argument with regard to robbery is necessary.
The main crux of the defendant's argument is that, at most, the evidence is sufficient to support a conviction of manslaughter, rather than a conviction of second degree murder. Thus, the primary issues in this matter are whether the defendant possessed the requisite specific intent to kill or inflict great bodily harm upon George and whether sufficient provocation existed to negate specific intent.
Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the proscribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990). Specific intent can be formed in an instant. State v. Harris, 2001-2730 (La.1/19/05), 892 So.2d 1238; State v. Cousan, 94-2503 (La.11/25/96), 684 So.2d 382. Specific intent need not be proven as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Murray, 36,137 (La. App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/05/03), 852 So.2d 1020. Specific intent may be established by circumstantial evidence alone if every reasonable hypothesis of innocence is excluded. State v. Cousan, supra. The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Jasper, 28,187 (La.App.2d Cir.6/26/96), 677 So.2d 553, writ denied, 96-1897 (La.2/21/97), 688 So.2d 521; State v. Brown, 618 So.2d 629 (La.App. 2d Cir. 1993), writ denied, 624 So.2d 1222 (La. 1993).
Manslaughter is a homicide which would be either first or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his cool reflection and self-control. LSA-R.S. 14:31(A)(1). The elements of "sudden passion" and "heat of blood" are mitigatory factors in the nature of a defense, and when the defendant establishes such factors by a preponderance of the evidence, a verdict for murder is inappropriate. State v. Leger, XXXX-XXXX (La.7/10/06), 936 So.2d 108; State v. Deal, XXXX-XXXX (La.11/28/01), 802 So.2d 1254, 1260, cert. denied, 537 U.S. 828, 123 S.Ct. 124, 154 L.Ed.2d 42 (2002). In addition, provocation *763 and time for cooling are questions for the jury to be determined under the standard of the average or ordinary person, one with ordinary self-control. Id. "If a man unreasonably permits his impulse and passion to obscure his judgment, he will be fully responsible for the consequences of his act." Leger, supra, quoting Reporter's Comment to LSA-R.S. 14:31.
After reviewing the record, we find that the evidence in this case is sufficient to support the defendant's conviction for second degree murder. It is undisputed that the defendant struck the unarmed George in the head with a metal pipe using great force. The requisite specific intent to kill or inflict great bodily harm was demonstrated by the weapon used and by the great force used. The testimony revealed that the defendant wielded the metal pipe as if he was "hitting a ball" and "trying to knock a home run." Simply stated, when an individual strikes another in the head with a four-foot long metal pipe with such great force, the jury can reasonably find that the offender actively desired the prescribed criminal consequences to follow his act.
With regard to provocation, the evidence indicates that the defendant was responding to a trivial matter, the possession of a watch, and that he had ample time to allow his anger to abate. The defendant left the scene and returned later with the metal pipe. Furthermore, he apparently spoke to George prior to striking him. While the witnesses had some contradictions in their testimony, the testimony made it clear that the defendant was not in a highly agitated state when he struck George. Instead, he was described as speaking in a voice that was calm and as being in a state "kind of in between" angry and calm when he swung the pipe. Furthermore, the witnesses did not note any argument between the defendant and George, much less any fighting, prior to the defendant striking George in the head. Thus, the jury could reasonably have concluded that an average person's blood would have cooled, even if "heat of blood" existed prior to the time that the defendant committed the offense.
This assignment lacks merit.
Excessive Sentence
The defendant also contends the sentence imposed is excessive. He asserts that the sentence is grossly disproportionate to the crime and "represents nothing more than the needless imposition of pain and suffering." According to the defendant, nothing in the record indicates that the sentence is necessary to avoid any further criminal activity by him or damage to society.
The defendant was convicted of second degree murder. The mandatory sentence for second degree murder is punishment by life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. LSA-R.S. 14:30.1(B). The argument that the mandatory life sentence for second degree murder is a violation of the prohibition against excessive punishment in the Louisiana Constitution has been repeatedly rejected. State v. Parker, 416 So.2d 545 (La.1982); State v. Brooks, 350 So.2d 1174 (La.1977); State v. Roberson, 40,809 (La.App.2d Cir.4/19/06), 929 So.2d 789.
In State v. Dorthey, 623 So.2d 1276 (La. 1993) and State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, the supreme court addressed the issue of mandatory sentences in the context of the habitual offender law. The court held that the downward departure from a mandatory minimum sentence may occur if the defendant rebuts the presumption of constitutionality by showing clear and convincing evidence that he is exceptional, namely, *764 that he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the gravity of the offense, the culpability of the offender, and the circumstances of the case. This rule has been extended to mandatory sentences beyond habitual offender cases. See State v. Fobbs, 99-1024 (La.9/24/99), 744 So.2d 1274; State v. Chandler, 41,063 (La.App.2d Cir.9/8/06), 939 So.2d 574.
In this case, the mandatory sentence imposed is not illegal, grossly disproportionate to the severity of the offense nor shocking to the sense of justice. The defendant neither argued nor provided any evidence to show that he is exceptional or that there were unusual circumstances not considered in this case. The evidence demonstrated that the defendant approached the unarmed victim from behind and struck him forcefully on the head with a metal pipe. The violent and heinous nature of the offense justifies the mandatory life sentence. This assignment is therefore without merit.

CONCLUSION
For the foregoing reasons, we affirm the defendant's conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.