WILLIAMS, J.
_JjThe defendant, B.A.A., was charged with one count of attempted aggravated burglary, in violation of LSA-R.S. 14:27 and LSA-R.S. 14:60, and one count of illegal possession of a handgun by a juvenile, in violation of LSA-R.S. 14:95.8. The defendant was adjudicated delinquent on both charges and was committed to the Office of Juvenile Justice for three years. For the reasons set forth herein, we affirm the defendant’s adjudication and disposition.
FACTS
On September 29, 2008, at approximately 4:35 p.m., Bryan Adams alerted the authorities regarding a burglary in progress at his home in Shreveport, Louisiana. Adams testified that he was in his home getting ready for work when the defendant and two other individuals knocked on the front door of Adams’ residence. Adams stated that he went to the front door, looked through the peephole and saw three juveniles that he did not recognize. Adams testified that he decided not to answer the door because he “thought they were selling candy or something and I didn’t want to buy it.” Adams stated that he went back to his room and was soon alerted by the sound of the defendant pulling on Adams’ screen door, which is located at the rear of the residence. Adams testified that he could see the other two juveniles through two other windows. Adams stated that he went into another room, used his cellular phone to call the police and armed himself with a gun.
Adams testified that while he was on the phone, the defendant and one of the other juveniles (later discovered to be the defendant’s brother) | ¡removed the screen from one of Adams’ windows and attempted to open the window. Adams stated that he had hidden himself so that he could see the juveniles, but they could not see him. Adams testified that he saw the defendant throw a rock and break the window. The defendant then put his hand through the window and attempted to open it. At that point, Adams confronted the defendant with the gun and told the defendant to “freeze.” Adams testified that all three juveniles “took off running.” Adams explained that the juveniles had been in the back yard of his residence, but the only exit was through the front yard. Adams came out of the front door and met all three of the juveniles in the front yard. One of the youths, described by Adams as “the younger white male,” immediately fell to the ground. The defendant continued to run, but eventually laid down on the ground; Adams was unable to catch the third juvenile.
Officer Dennis Buckingham and Officer Guy, of the Shreveport Police Department, were dispatched to the reported burglary in progress. When the officers arrived at the scene, Adams was detaining two juveniles at gunpoint on his front lawn. Officer Buckingham placed the two youths in handcuffs and took them into custody. During a pat-down search of the defendant’s person, Officer Buckingham felt an object in the defendant’s pocket. The defendant immediately informed the officer that the object was a gun, and the officer removed a loaded revolver.
After the juveniles were detained, Officer Guy obtained contact information for their parents.[1] Officer Guy contacted the parents and ^transported the juveniles to the detectives’ office to be questioned. Officer Guy stated that he did not read the youths their Miranda rights; rather, he *1186 stated that he advised them to “keep then-mouth shut,” and Detective Tyler conducted the investigation at the detectives’ office.
On October 1, 2008, the state filed a petition alleging that the defendant had committed attempted simple burglary. On October 21, 2008, the state filed an amended petition, alleging that the defendant had committed attempted aggravated burglary and had violated LSA-R.S. 14:95.8, which prohibits possession of a handgun by a juvenile.
Following a bench trial, the defendant was adjudicated delinquent as charged. On December 15, 2008, the court entered a disposition that the defendant should be committed to the Office of Juvenile Justice for three years. The court recommended secure care and set a rule to show cause hearing in order to require the superintendent to show cause why the defendant should not be placed in secure care. The court also recommended the Fast Track program, stating that if the defendant “acts properly in that program,” after three months, the Office of Juvenile Justice would be able to request the court to release the defendant. The court set a review date for six months from the date of disposition and concluded that it would continue to review the defendant’s sentence at intervals, to assess the defendant’s progress and determine whether the defendant should be released.
| ¿DISCUSSION

Sufficiency of the Evidence

The defendant contends the trial court erred in convicting him of “aggravated burglary.”[2] He argues that the evidence introduced at trial was insufficient to demonstrate that he had the specific intent to commit a theft or felony on the premises. The defendant also argues that the evidence was insufficient to support a finding that he was armed with a dangerous weapon, noting that the gun was never used, referred to, or known by the victim to be in existence during the commission of the offense.[3]
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488, unit denied, 2002-2634 (La.9/5/03), 852 So.2d 1020. This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own ^appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165.
The appellate court does not assess the credibility of witnesses or reweigh evi *1187 dence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to the trier of fact’s decision to accept or reject the testimony of a witness in whole or in part. State v. Hill, 42,025 (La.App. 2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
Attempt is defined by LSA-R.S. 14:27 as follows:
[A]ny person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
LSA-R.S. 14:60 provides, in pertinent part:
Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
A “dangerous weapon” is “any gas, liquid or other substance or instrumentality, which, in the manner used, is likely to produce death or Rgreat bodily harm.” LSA-R.S. 14:2.
In proving the crime of aggravated burglary, the state must provide evidence which supports finding beyond a reasonable doubt that the defendant made an unauthorized entry of a structure with the specific intent to commit a theft or a felony. State v. Scott, 41,690 (La.App. 2d Cir.1/24/07), 948 So.2d 1159, citing State v. Lockhart, 438 So.2d 1089 (La.1983). The unauthorized entry and the specific intent to commit a felony are separate elements of the crime. Id. Because these are separate elements, the unauthorized entry cannot be used to prove felonious intent. Id.
Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. LSA-R.S. 14:10(1); State v. Draughn, 2005-1825 (La.1/17/07), 950 So.2d 583, cert. denied, — U.S.-, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007). See also State v. Allen, 41,548 (La.App. 2d Cir.11/15/06), 942 So.2d 1244, writ denied, 2007-0530 (La.12/7/07), 969 So.2d 619. Flight and attempt to avoid apprehension are circumstances from which a trier of fact may infer a guilty conscience. State v. Durden, 36,842 (La.App. 2d Cir.4/9/03), 842 So.2d 1244, writ denied, 2003-1350 (La.11/26/03), 860 So.2d 1131.
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Hill, supra. In reviewing the correctness of such a determination, the Court should review the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable trier of fact of the guilt of the defendant beyond a | Treasonable doubt as to every element of the offense. Jackson v. Virginia, supra; State v. Hui-zar, supra.
In the instant case, the actions taken by the defendant tend directly toward unauthorized entry of Adams’ residence, while Adams was present, for the purpose of committing a felony or theft within the *1188 residence. Adams testified that the defendant and the other youths knocked on the door of his residence and, when no one answered, the defendant attempted to open doors and windows in order to gain access to the residence. Adams also stated that the defendant removed the screen from a window, threw a rock and shattered the glass and placed his hand through the glass. When Adams told the defendant to “freeze,” the defendant immediately fled the scene, allowing an inference of the defendant’s guilty conscience by the finder of fact.
In addition, the statute defining aggravated burglary does not require that the dangerous weapon be used; the statute merely requires the defendant to have been “armed with a dangerous weapon” while committing a burglary. In this case, the uncontroverted testimony of the police officers established that the defendant possessed a loaded revolver at the time of the offense.
Further, the defendant was neither charged with nor convicted of aggravated burglary; he was charged with and convicted of an attempt to commit aggravated burglary. Therefore, after reviewing the record in its entirety, we find that the evidence was sufficient to allow a reasonable finder of fact to conclude that the defendant possessed the requisite specific |sintent to commit a burglary, and performed acts which tended directly toward the accomplishment of that goal. Additionally, the defendant was armed with a dangerous weapon and the victim was home at the time of the offense. Consequently, the juvenile court did not err in adjudicating the defendant delinquent for the offense of attempted aggravated burglary. The defendant’s assignments are without merit.

Predisposition Interview/Right to Counsel

The defendant also contends he was not represented by counsel during the predisposition interview, and he was not advised of his Miranda rights or counseled that he had the right to remain silent prior to the interview. Citing LSA-Ch.C. art. 810, the defendant also argues that the law does not allow a juvenile defendant to waive his right to counsel. The defendant urges that the investigator asked questions which bore directly on the issues which the state had attempted to advance during the hearing. The defendant further argues that his adjudication was not final at the time he made the statements to the investigator because defense counsel intended to file a motion to vacate.
The Sixth and Fourteenth Amendments to the United States Constitution, as well as Article I, § 13 of the Louisiana Constitution, guarantee the accused in a criminal proceeding the right to assistance of counsel for his defense. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); State v. Carpenter, 390 So.2d 1296 (La.1980); State v. Flanagan, 32,535 (La.App. 2d Cir.10/29/99), 744 So.2d 718. An adult defendant’s Sixth Amendment right to the assistance of counsel attaches |flonly after commencement of adversarial judicial criminal proceedings. State v. Carter, 94-2859 (La.11/27/95), 664 So.2d 367. An adult defendant does not, however, have the right to counsel at all proceedings after the right has attached; the right to counsel only protects a defendant in proceedings which may be considered to be “critical stages.” Id. at 372, 373.
All rights guaranteed to criminal defendants by the Constitution of the United States or the Constitution of Louisiana, except the right to a jury trial, shall be applicable in juvenile court proceedings brought under the Louisiana Children’s *1189 Code. LSA-Ch.C. art. 808. An accused child is entitled to counsel “[a]t every stage of proceedings.” LSA-Ch.C. art. 809; See also, In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). In Gault, the court specifically excluded proceedings conducted after an adjudication of delinquency had been made; however, the court stated:
We do not in this opinion consider the impact of these constitutional provisions upon the totality of the relationship of the juvenile and the state. We do not even consider the entire process relating to juvenile “delinquents.” For example, we are not here concerned with the procedures or constitutional rights applicable to the pre-judicial stages of the juvenile process, nor do we direct our attention to the post-adjudicative or dispositional process.
In re Gault, supra, 387 U.S. at 13, 87 S.Ct. 1428. The Court further noted that: “[t]he problems of pre-adjudication treatment of juveniles, and of post-adjudication disposition are unique to the juvenile process; hence what we hold in this opinion with regard to the procedural requirements at the adjudicatory stage has no necessary applicability to other steps of the 1 ^juvenile process.” In re Gault, supra at 31, 87 S.Ct. 1428 (footnote 48).
Following adjudication of delinquency, a court may, in its discretion, order “such physical and mental examination and evaluation of the child as may be helpful in determining a fair and just disposition.” LSA-Ch.C. art. 888. LSA-Ch.C. art. 890 provides:
A.In making the investigation, the probation officer shall investigate and report to the court regarding:
(1)The circumstances attending the commission of the offense; the attitudes of the child and his parents toward the offense; the prior offenses committed by the child, including other referrals or contacts not resulting in juvenile court petitions; and, when applicable, the disposition of companion cases arising out of this offense.
(2) The impact on the victim, if a child is adjudicated of or admits to a delinquent act involving a victim. The court shall require that a victim impact statement be included in the predisposition report. The victim impact statement shall include factual information as to whether the victim or his family has suffered, as a result of the offense, any monetary loss, medical expense, or physical impairment, and shall include any other information deemed relevant. The district attorney may also file a victim impact statement with the court.
(3) The child’s home environment including his family’s composition and dynamics, stability, economic status, participation in community or religious activities, and any physical, mental, or emotional handicaps, substance abuse, or criminal history of any of its members.
(4) The child’s current physical description, developmental and medical history, social adjustment in the community, school record, including the name and address of the school where the child is registered and enrolled, employment or vocational interest, significant behavior patterns, or other personality traits relevant to his rehabilitation.
B. The report shall contain a list of all persons contacted |nin completing the investigation and their relationship to the child.
C. The report shall contain a brief statement of the child’s identified behavioral problems and the probation officer’s assessment of cause and potential for rehabilitation, indicating specifically those resources available in the commu *1190 nity or within the child’s extended family which could provide needed assistance to the child and his family.
D. The report shall contain recommendations for suggested disposition, including, if applicable, special conditions of supervision.
The analogous provision in the Louisiana Criminal Code is the definition of a presentence investigation report. LSA-C.Cr.P. art. 875. The presentence investigation report (or “PSI”) is an aid to the court, not a right of the defendant, and the court is not required to order that the report be prepared. State v. Bell, 377 So.2d 275 (La.1979). A defendant has a right to a hearing in order to challenge any false information contained in the PSI. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983).
Many federal courts, and at least one Louisiana court of appeal, have held that a defendant does not have a right to counsel during an interview with a probation officer in the presentence investigation. In Brown v. Butler, 811 F.2d 938 (5th Cir. 1987), the defendant was convicted of forgery. During the presentence investigation interview, the defendant informed the probation officer that he had supported himself for a number of years by periodically traveling across the country passing bad checks. The court rejected the defendant’s argument that he was entitled to counsel during the interview, stating:
JjgfThe defendant] was interviewed by a probation officer, who is an arm of the court charged with assisting the court in arriving at a fair sentence. We conclude that such an interview is not a critical stage of the proceeding in which counsel’s presence or advice is necessary to protect the defendant’s right to a fair trial.
Id. at 941. See also, State v. Pete, 2003-0694 (La.App. 4th Cir.9/24/03), 857 So.2d 1107; Castro v. Ward, 138 F.3d 810 (10th Cir.1998); United States v. Gordon, 4 F.3d 1567 (10th Cir.1993); U.S. v. Tisdale, 952 F.2d 934 (6th Cir.1992); United States v. Hicks, 948 F.2d 877 (4th Cir.1991); United States v. Jackson, 886 F.2d 838 (7th Cir. 1989); Baumann v. United States, 692 F.2d 565 (9th Cir.1982).
We conclude that the predisposition investigation does not constitute a stage of the proceedings such that the defendant was entitled to counsel. A predisposition investigation is ordered by the court after the court has adjudicated delinquency; therefore, a juvenile does not have a constitutional right to counsel during interviews conducted during the investigation. We note that a predisposition investigation serves only as an aid to the court, and is neither an adjudicative nor a punitive stage which could result in a juvenile’s commitment to an institution. Consequently, unpersuaded by the defendant’s argument, we conclude that conducting the predisposition interview of the defendant without counsel did not constitute a violation of the defendant’s right to counsel.
Additionally, we find nothing in the record to support the defendant’s argument that the proceedings were not final when he made the statements to the investigator because his attorney intended to file a motion to vacate |1sthe adjudication. This assignment lacks merit.
CONCLUSION
For the foregoing reasons, the defendant’s adjudication and his three-year commitment to the Office of Juvenile Justice are hereby affirmed.
ADJUDICATION AFFIRMED; DISPOSITION AFFIRMED.

. At the time of the offense, the defendant was 16 years old.

. We note that the defendant was adjudicated delinquent for the charge of attempted aggravated burglary.

. It is proper, but not mandatory, for the sufficiency issue to be raised in the trial court by a LSA-C.Cr.P. art. 821 motion. It is also proper to raise the issue solely by a LSA-C.Cr.P. art. 920 assignment of error to the appellate court without the necessity of any foundation motion, under Article 821 or otherwise, in the trial court. State v. Green, 28,994 (La.App. 2d Cir.2/26/97), 691 So.2d 1273.