STEWART, J.
11 On March 12, 2009, the defendant, Steven L. Enterkin, was charged by bill of information with one count of aggravated rape,[1] a violation of La. R.S. 14:42. On *260 January 21, 2010, the jury found Enterkin guilty of the responsive verdict of molestation of a juvenile. On February 19, 2010, Enterkin filed a motion for judgment of acquittal, or in the alternative, a motion for a new trial, or further in the alternative, a motion for modification of the verdict. Enterkin’s motion was taken up by the trial court on February 23, 2010. The trial court granted Enterkin’s motion in part by amending the jury verdict from molestation of a juvenile to that of sexual battery. The trial court subsequently sentenced Enterkin to serve 30 years at hard labor, with the first 25 years to be served without the benefit of parole, probation or suspension of sentence. Enterkin now appeals, urging three assignments of error. For the following reasons, we reverse the ruling of the trial court, reinstate the jury’s responsive verdict of guilty of molestation of a juvenile, and remand the matter to the trial court for resentencing in accordance therewith.
| .FACTS
On August 19, 2006, K.M., who was 11 years old at the time, was living with her mother, her older sister, and her younger brother, in a trailer home in Wisner, Louisiana.[2] That evening, K.M.’s sister had her boyfriend spend the night. 21-year-old Steven Enterkin, a friend of KM.’s sister’s boyfriend, also stayed the night in the trailer as a guest of K.M.’s mother. Enterkin and KM.’s mother spent the evening drinking and having sex in her bedroom. At some point in the night, En-terkin left K.M.’s mother’s bedroom and went into the living room where K.M. was sleeping on the couch. After lying down on the couch next to K.M., Enterkin asked K.M. if she wanted to “do anything.” Despite her telling him no, Enterkin performed oral sex on the child and then had anal sexual intercourse with her.
During the trial, KM.’s grandmother testified that on August 19, 2006, K.M., her sister, and her brother were living with them mother in Wisner, Louisiana. After the grandmother learned that KM.’s mother threatened to kill her son while disciplining him, the children moved in with her in 2007. The grandmother also explained that K.M.’s mother had remarried a man who she believed was involved with drugs. After the children moved in with her, the grandmother began noticing that K.M.?s brother was exhibiting some problems at school. She contacted school officials and enrolled him in a counseling program.
| »After approximately 14 months of counseling, K.M.’s brother’s counselor informed KM.’s grandmother that he was not improving and would be released. She was told by the treating psychiatrist that his case was going to be turned over to the state, as it had become apparent that he had suffered some type of abuse, likely sexual in nature. The grandmother then went home and sat the children down to talk to them about the situation. She told them that they needed to tell her if anything had happened to them because they might be placed in foster care. K.M. then confided to her grandmother that Enterkin had sex with her. When her grandfather asked if she was afraid at the time that she would get pregnant, she responded that she was not afraid because Enterkin had anal sex with her.
*261 The grandmother related K.M.’s story to Child Protective Services when they visited her home the next evenings The grandmother testified that she had no grudge against Enterkin or other reason to falsely report the abuse. She further testified that she cooperated with Child Protective Services in hopes of having the children reunited with their mother.
After K.M. told her grandmother about the sexual abuse, she was taken to Dr. Mead O’Boyle for a medical examination. She also gave a statement to law enforcement authorities. After an investigation was completed, Enterkin was arrested for aggravated rape.
K.M. testified that on July 14, 2006, her father died. She stated that during that July and August she was living with her mother, sister and brother in a trailer in Wisner, Louisiana. K.M. testified that she knew the Ldefendant, Enterkin, through her sister’s husband. She then identified Enterkin in open court. She testified that Enterkin would come to the trailer every so often and that she thought of him as a brother. She stated that the sexual encounter occurred on August 19, 2006. K.M. did not see Enterkin until a week later. She was in the trailer doing her homework. Enterkin began talking to K.M. and asked her if she would give him a kiss. She told him no, that she was busy doing her homework. He then got angry and left.
K.M. explained that she did not tell her mother or sister about the encounter because she was afraid. The first person she reported the incident to was her grandmother. K.M. then spoke with Lisa Roberts and provided her with all the details of that night. K.M. testified that she was telling the truth and that she had no ill will towards Enterkin that would cause her to make up the story.
Lisa Roberts, a child protection investigator with the Department of Social Services, testified that she received a report on September 18, 2008, concerning K.M. and her brother. Initially, she was informed that KM.’s brother had suffered some abuse. While conducting an investigation regarding her brother, Roberts was told by K.M. about the sexual abuse she suffered by Enterkin.
After talking to K.M., Roberts reported the incident to law enforcement, specifically talking to Mike Gilmore of the Winns-boro Police Department. K.M. agreed to talk to law enforcement and was interviewed on September 24, 2008.
| SK.M. and her brother both received medical examinations to check for signs of sexual abuse. K.M. was also referred to a counseling center that specializes in sexual abuse.
Roberts testified that it was not unusual for a victim, such as K.M., to wait years until reporting sexual abuse. She explained that many children never report such abuse.
Dr. Mead O’Boyle, an expert in child sexual abuse, testified that she examined K.M. on October 15, 2008. In her report, Dr. O’Boyle had written that K.M. told her the incident happened in October 2006. Dr. O’Boyle stated that they tried to figure out the date, and that it was probably earlier in the year than October. In all other respects, the story K.M. told Dr. O’Boyle was substantially similar to the one she told Roberts and related in her trial testimony.
The State rested following Dr. O’Boyle’s testimony. The defense then rested its case. The jury was excused and the trial court asked both counsel for the state and the defendant whether they had read over the jury instructions, and if they had any changes they would like to make. Neither *262 requested any changes. After closing arguments, the trial court read the jury charges, including the agreed-to responsive verdicts. The jury was then excused to deliberate, and the trial court asked both counsel for the state and counsel for Enterkin if they had any corrections to the jury instructions, and both stated that they did not.
On January 21, 2010, the jury found Enterkin guilty of molestation of a juvenile. On February 23, 2010, the trial court heard Enterkin’s “Motion Rfor Judgment of Acquittal, or in the alternative, a Motion for New Trial, or further in the alternative, a Motion for Modification of the Verdict.” The trial court noted that the jury had found Enterkin guilty of a responsive verdict of molestation of a juvenile, defined in La. R.S. 14:81.2 as “the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile.” The defense argued that no rational trier of fact could have found that Enterkin used force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or influence by virtue of a position of control or supervision. The trial court agreed. The trial judge expressed his opinion that Enterkin should have been found guilty of aggravated rape.
The trial court then indicated that it would amend the verdict to find Enterkin guilty of indecent behavior with a juvenile. The state suggested to the trial court that it amend the verdict to sexual battery. Finding the definition of that crime consistent with the elements proven at trial, the trial court amended Enterkin’s verdict to sexual battery.
After Enterkin waived sentencing delays, the trial court began the sentencing phase. The trial court, consulting the pre-sentence report, went through the relevant factors for sentencing. Enterkin was sentenced to 3017years at hard labor, with the first 25 years to be served without the benefit of parole, probation or suspension of sentence. Additionally, Enterkin was informed that he must register as a sex offender. Enterkin now appeals.
DISCUSSION

Sufficiency of the Evidence

Enterkin argues that the evidence adduced at trial was insufficient to support a conviction of sexual battery, molestation of a juvenile or indecent behavior with a juvenile.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard, now legislatively embodied in La.C.Cr. P. art. 821, *263 does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000); State v. Givens, 45,246 (La.App. 2 Cir. 4/09/10), 41 So.3d 589. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Black, supra; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Eason, supra; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Robinson, 36,147 (La.App.2d Cir.12/11/02), 833 So.2d 1207; State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490.
IflAn appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Jacobs, 504 So.2d 817 (La.1987); State v. Adkins, 39,724 (La.App.2d Cir.6/29/05), 907 So.2d 232, writ denied, 2006-2514 (La.5/4/07), 956 So.2d 607.
The defendant was charged with aggravated rape, which is defined in La. R.S. 14:42, in pertinent part, as:
A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one of the following circumstances:
[[Image here]]
(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim’s age shall not be a defense.
K.M.’s uncontradicted testimony of the events that occurred on August 19, 2006, which included testimony concerning anal intercourse, is sufficient, in and of itself, to prove that Enterkin committed aggravated rape. Her testimony was corroborated by several witnesses, including KM.’s sister, who testified that when she came out to the living room sometime in the night she saw Enterkin lying next to K.M. with his arm draped over her. K.M. was markedly consistent in her story as relayed to her grandmother, Lisa Roberts and Dr. O’Boyle. Furthermore, Dr. O’Boyle Imtestified that it was not unusual for a *264 child to wait a long period of time, months or years, to report sexual abuse. While Dr. O’Boyle did not find any physical evidence of trauma to KM.’s anus, she testified that she did not expect to find any because of the length of time between her examination and the rape.
There was also sufficient evidence to prove the date of the offense. KM.’s uncontradicted testimony was that Enter-kin raped her on August 19, 2006. She testified that she remembered the date because it was the weekend before school started. K.M.’s mother and sister both corroborated K.M.’s testimony, stating that the rape occurred sometime after KM.’s father died on July 14, 2006, and sometime before September 2006. K.M.’s uncontradicted testimony is sufficient to prove the date of the offense.
The record also reveals sufficient evidence to convict Enterkin of molestation of a juvenile. Molestation of a juvenile is defined in La. R.S. 14:81.2, in pertinent part, as:
A. Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile’s age shall not be a defense.
K.M. testified that she was awakened by Enterkin in the middle of the night. She told him that she did not want to do anything with him. Thereafter, he continued to touch her legs and repeatedly asked her if she wanted to do something with him. She testified that she finally consented because she |nwas afraid of what would happen to her. After he was finished, he warned her not to tell anyone about what he had done. The foregoing facts demonstrate that Enterkin used psychological intimidation to commit sexual acts upon K.M.
There was sufficient evidence to prove that the defendant committed sexual battery as well. Sexual battery is defined in La. R.S. 14:43.1, in relevant part, as:
A. Sexual battery is the intentional engaging in any of the following acts with another person where the offender acts without the consent of the victim, or where the act is consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender ...
K.M.’s uncontradicted testimony demonstrates that she was under the age of 15, was at least three years younger than Enterkin, and that there was a touching of the anus or genitals of the victim, K.M., using an instrumentality or part of the body of the offender, Enterkin.
From the totality of the evidence presented to it, the jury could have reasonably concluded beyond a reasonable doubt that defendant was guilty of aggravated rape, as well as both of the possible responsive verdicts. The jury’s choice to return the responsive verdict of molestation of a juvenile is fully supported by the evidence. Therefore, this assignment is without merit.

*265
11⅞Modification of the Verdict

In the third assignment of error, the defendant asserts that the trial court erred in modifying the jury’s verdict from molestation of a juvenile to sexual battery, because sexual battery is not a lesser included offense of molestation of a juvenile.
A jury has the prerogative to compromise and render a lesser responsive verdict whenever it could have convicted as charged. State v. Bryant, 33,078 (La.App. 2 Cir. 3/1/00), 754 So.2d 387. A defendant will not be entitled to review of a responsive verdict, even where insufficient evidence exists to support the responsive verdict, if he does not contemporaneously object to its inclusion. Id.; State v. Schrader, 518 So.2d 1024 (La.1988), cert. denied, 498 U.S. 903, 111 S.Ct. 265, 112 L.Ed.2d 221 (1990).
A post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. La. C. Cr. P. art. 821(B).
In this case, the trial court erred in amending the jury’s verdict of molestation of a juvenile. The jury chose, as was its prerogative, to render a responsive verdict of guilty of molestation of a juvenile despite having sufficient evidence to convict the defendant of aggravated rape. As discussed in the first assignment, sufficient evidence existed to convict Enterkin of aggravated rape and the jury chose to compromise and impose a responsive verdict of molestation of a juvenile.
11RWe find that the trial court erroneously changed the verdict from molestation of a juvenile to sexual battery. The jury imposed a responsive verdict of molestation of a juvenile, and as determined above, sufficient evidence existed to convict Enterkin of the crime charged. Therefore, we reinstate the jury’s responsive verdict of guilty of molestation of a juvenile.

Sentencing

The defendant argues in his second assignment of error that his sentence is excessive. Due to the reversal of the trial court’s verdict, the sentence imposed is likewise vacated. The matter will be remanded for resentencing for the offense of molestation of a juvenile.
CONCLUSION
For the foregoing reasons, the ruling of the trial court is reversed, the jury’s responsive verdict of guilty of molestation of a juvenile reinstated, and the matter remanded to' the trial court for resentencing in accordance therewith.
REVERSED AND REMANDED FOR SENTENCING.

. The bill of information charged that the defendant violated "14:42 Aggravated Rape by committing rape upon K.M., on or about August 19, 2006 ...” The bill did not set forth the age of K.M., or the fact that the defendant was being charged with aggravated rape of a child under the age of 13. After conducting a thorough review of the statutory and jurisprudential law, it does not appear that the state was required to set forth such facts. La. C. Cr. P. art. 465 lists specific indictment forms for the charging of certain offenses. The form for aggravated rape which may be utilized under the statute provides: 39. Aggravated Rape-A.B. committed aggravated rape upon C.D. In the instant case, the trial court *260 explicitly stated in its charges to the jury that "[t]he defendant has been charged with committing the aggravated rape of [K.M.][s¿c ] on or about August 19, 2006, when she was under the age of thirteen years old.” The defendant has not alleged that he was unaware of the charges against him.

. Pursuant to La. R.S. 46:1844(W), the victim is referenced herein only by her initials.