BROWN, C.J.
11 Defendant, Christopher Jiiarreld Hicks, was charged with molestation of a juvenile and, following a jury trial, he was convicted of indecent behavior with a juvenile. Defendant was sentenced' to serve seven years at hard labor and to pay a $5,000 fine. Defendant now appeals, arguing that the evidence was insufficient to convict him. For the following reasons, we affirm.
‘ FACTS
On October 13, 2014, J.S. called the Haughton Police Department to report that her 14r-year-old son, W.V., had been molested by defendant, Christopher Jiiar-reld Hicks, a 27-year-old man, while taking a shower at defendant’s home.[1] Police interviewed J.S., W.V., and defendant. During his interview, defendant confessed to performing oral sex on W.V. and was arrested. On August 31, 2015, defendant was charged by amended bill of information with molestation of a juvenile.
*93 At trial, W.V. testified that he met' defendant, whom he identified in open court, through his mother when she began working at a convenience store where defendant was a manager. Defendant was also W.V.’s neighbor in a trailer park in Haughton, Louisiana, Although W.V. knew defendant for only a few months, he felt he could trust defendant.
On or around October 1, 2014, a water pipe burst at W.V.’s family home. Defendant offered to allow W.V.’s family to take showers at his home, and W.V. went to defendant’s home by himself to shower. According [ 2to W.V., at some point, defendant attempted to enter the shower with him, but W.V. told him “no,” and defendant left the bathroom. However, when W.V. was finished taking a shower, defendant called for him to come into the bedroom. W.V. testified that he complied with defendant’s request because W.V. was taught to listen to his elders.
Upon entering the room, W.V. saw that defendant was naked. Defendant told W.V. to take off his clothes and sit on the bed, which W.V. did. Defendant then performed oral sex on W.V. while masturbating. W.V. explained that he tried to leave the room two or three times during the incident, but defendant pushed him back on the bed each time. After defendant ejaculated, he put W.V.’s hand on his penis. Defendant told W.V. not to tell anyone what had happened, and W.V. left. W.V. testified that he did not tell anyone about what defendant had done until two weeks later because he was embarrassed. W.V. testified that he was 14 years old at the time of the incident and still suffers from nightmares as a result of the abuse.
On cross-examination,[2] W.V. admitted that he was “not really good with remembering dates” but believed the incident with defendant occurred in October 2014.
J.S. corroborated her son’s testimony that the water pipe burst on or around October 1, 2014, and that W.V. went to defendant’s home to shower. J.S. noticed that around that time, W.V, started acting strangely by spending a lot of time in his room alone and not eating. Approximately two weeks after going to defendant’s house to shower, W.V. confided to his mother that | -¡defendant had touched him inappropriately. J.S. called the. Haughton Police Department to report the crime.
On cross-examination, J.S. testified that she was fired from the convenience store prior to the incident with W.V. and defendant. However, J.S. explained that the store owner; not defendant, actually fired her, J.S. claimed that she called defendant after learning that her son had been molested, and defendant admitted that he “had sex” with W.V. in his shower. J.S. explained that she was unaware that anything had occurred in defendant’s bedroom until she heard her son testify at trial. J.S.testified that she did not know at the time of the incident that defendant was a registered sex offender
Deputy Herren of the Webster Parish Sheriffs Office, formerly an officer with the Haughton police department, responded to J.S.’s house on October 13, 2014. Deputy Herren spoke with J.S. and W.V. and then went to defendant’s trailer to interview him. A video -recording of the interviews was played for the jury.[3]
*94 The video showed Deputy Herren’s interview with J.S. wherein she stated that defendant “tried to rape [her] son.” J.S. mentioned that she knew defendant had been convicted of a sex offense and was on parole. W.V. also spoke with Deputy Her-ren and said that he went to defendant’s home to take a shower, and that while he was in the shower defendant came in and tried to |4make W.V. perform oral sex on him. W.V. stated that defendant also “touched him on the front.” W.V. said that he was at defendant’s house at around 7:00 or 8:00 p.m. when the incident happened. However, W.V. never specifically stated what day defendant committed the offense.
After speaking with J.S. and W.V., Deputy Herren went directly to defendant’s home. Prior to interviewing defendant, Deputy Herren advised him of his Miranda, [4] rights, which defendant waived. Thereafter, defendant admitted that he performed oral sex on “the little boy, the fourteen-year-old.” Defendant was then placed under arrest. Defendant claimed that J.S. had given him “parental consent” to engage in sexual activity with W.V.
Deputy Herren testified that based on W.V.’s interview, he thought that the molestation had occurred the previous evening, and not two weeks prior. However, Deputy Herren explained that in his experience, victims of sex offenses often wait to report the crime, which can lead to confusion as to the exact date and time of the offense.
Defendant testified at his trial. He admitted to having a prior conviction for forcible rape. According to defendant, the victim in the previous case (a 15-year-old boy) claimed that defendant (who was 21 years old at the time) performed oral sex on the victim without his consent. Defendant stated that he went door-to-door in the trailer park and let all of his neighbors know that he was a registered sex offender.[5]
Defendant said that he worked with and supervised J.S.' and that he fired her on October 10, 2014, via a text message. Defendant read the text | ^message to the jury wherein he stated that the owners of the store had decided to terminate her employment due to her numerous absences. Defendant explained that J.S. was very upset with him about being fired.
Defendant claimed that on October 1, 2014, he was in Haughton with his probation officer until approximately 7:00 p.m. On October 12, 2014, defendant traveled to Texas and did not return to his home until early the next morning. He explained that he had not slept for three days and had been drinking alcohol before he confessed to Deputy Herren.
Defendant’s ex-boyfriend, Shane Me-shell, lived with defendant until October 2, 2014. Meshell also worked with defendant at the convenience store. J.S. told Meshell that she was very upset that she had been fired. Meshell corroborated defendant’s story that he went to Texas on October 12, 2014, and did not return until around 1:30 a.m. the next morning. Around 3:30 a.m., Meshell received a phone call from J.S. *95 informing him that W.V. had accused defendant of molesting him. Meshell testified that he only saw W.V. go to defendant’s trailer one time to shower, and defendant was not home at the time. On cross-examination, Meshell confirmed that he was not living with defendant from approximately October 2, 2014, to October 13, 2014.
On December 16, 2015, following a jury trial, defendant was convicted of indecent behavior with a juvenile. On February 16, 2016, the trial court sentenced defendant to serve seven years at hard labor and to pay a $5,000 fine. On May 13, 2016, defendant was granted an appeal.
J^DISCUSSION
Defendant claims that the evidence adduced at trial was insufficient to convict him of indecent behavior with a juvenile. He points to inconsistencies in W.V.’s and J.S.’s trial testimony and the statements they gave to Deputy Herren on October 13, 2014. Specifically, defendant notes that W.V. never told Deputy Herren that defendant had performed oral sex on him in defendant’s bedroom, but only stated that defendant had touched him in the shower. Additionally, W.V. could not give a specific date for when the incident occurred. Defendant asserts that W.V. and J.S. fabricated the allegations against defendant in retribution for the fact that defendant fired J.S. from the convenience store where he worked as her manager.
The state counters that the jury accepted the testimony of W.V. and J.S., and that such credibility determinations should not be disturbed on appeal. The state argues that evidence adduced at trial proved all of the essential elements of indecent behavior with a juvenile.
A claim of insufficient evidence is determined by whether, on the entire record, a rational trier of fact could find defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review, the appellate court considers whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Tate, 01-1658 (La. 05/20/03), 851 So.2d 921; State v. Crossley, 48,149 (La.App. 2 Cir. 06/26/13), 117 So.3d 585, writ denied, 13-1798 (La. 02/14/14), 132 So.3d 410. The appellate court does not assess the credibility of witnesses or reweigh evidence, and gives great deference to the jury’s decision to |7accept or reject the testimony of a witness or the weight the jury gives to direct or circumstantial evidence. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442; State v. Eason, 43,788 (La.App. 2 Cir. 02/25/09), 3 So.3d 685, writ denied, 09-0725 (La. 12/11/09), 23 So.3d 913, cert. denied, 561 U.S. 1013, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010).
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness in whole or in part; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La. 01/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000); State v. Woodard, 47,-286 (La.App. 2 Cir. 10/03/12), 107 So.3d 70, writ denied, 12-2371 (La. 04/26/13), 112 So.3d 837; State v. Hill, 42,025 (La.App. 2 Cir. 05/09/07), 956 So.2d 758.
La. R.S. 14:81 provides, in pertinent part:
A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
*96 (1)Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child’s age shall not be a defense....
' The Louisiana Supreme Court has previously stated that oral sex with a juvenile victim constitutes a lewd or lascivious act. State v. Jones, 10-0762 (La. 09/07/11), 74 So.3d 197.
Both J.S. and W.V. testified that on or around October 1, 2014, when W.V. was 14 and defendant was 27, a water pipe burst at their house, and W.V. took a shower at defendant’s trailer home. W.V. | «testified that while there, defendant forced him to undress and then performed oral sex on him while defendant masturbated. The foregoing evidence, in and of itself, was sufficient to prove that defendant committed the offense of indecent behavior with juveniles upon W.V.
Defendant also admitted to Deputy Her-rén that he performed oral sex on “the fourteen-year-old” and claimed that he had J.S.’s consent to do so. Although defendant points out that W.V. could not recall the specific date when the incident occurred, Deputy Herren explained that in his experience, sexual abuse victims often wait to report sex crimes, which can lead to confusion as to the specific date and time of the offense. Furthermore, the jury’s decision to accept W.V.’s testimony as true is enti-' tied to great deference.
CONCLUSION
For the aforementioned reasons, defendant’s conviction and sentence are AFFIRMED.

. In accordance with La, R.S. 46:1844(W)(3), ' the victim and his mother will be identified by their initials. The victim's date of birth is listed on the amended bill of information as November 27, 2000. Defendant’s date of birth is September 24, 1987.

. Defendant represented himself at trial with the assistance of stand-by counsel.

. Prior to trial, and outside the presence of the jury, a free and voluntary hearing was held, after which the trial court determined that defendant’s statement to Deputy Herren was freely 'and voluntarily made. Immediately following the free and voluntary hearing, a 404(b) hearing was conducted. The trial court initially restricted the state's ability to play the entire videotaped confession because *94 mention was made during the interview of defendant’s previous sex offense conviction. However, after defendant made mention during J.S.’s cross-examination that he had a prior conviction for forcible rape, the trial court held that the state was permitted to play the entire videotaped interview. The video recording was admitted into evidence as State’s Exhibit 1.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Three of defendant’s neighbors, Carl Robbins, Suzie Lucas and Chelsea Movan, testified for the defense that they received notice in the mail that defendant was a registered sex offender.