671 So.2d 1242 (1996)
STATE of Louisiana, Appellee,
v.
Thomas C. KERRIGAN, Appellant.
No. 27,846-KA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1996.
*1243 Peter Edwards, Monroe, for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, H. Stephens Winters, Asst. District Attorney, for Appellee.
Before NORRIS, WILLIAMS and GASKINS, JJ.
*1244 WILLIAMS, Judge.
The defendant, Thomas C. Kerrigan, was indicted by a Ouachita Parish grand jury with two counts of distribution of marijuana, violations of LSA-R.S. 40:966. After a jury trial, he was convicted of both counts, and the trial court sentenced him to ten years at hard labor on each count, to run concurrently. The trial court also imposed a $500 fine on each count, and directed the defendant to pay court costs or spend ninety days in jail upon default of payment of the fine and court costs. A timely motion to reconsider sentences was denied, and the defendant appeals urging that his convictions are based upon insufficient evidence, and that his sentences are excessive. For the reasons assigned below, we amend the defendant's convictions and sentences, and affirm as amended.

FACTS
The record indicates that on or about June 15, 1993 and July 8, 1993, the defendant sold marijuana to undercover law enforcement officers in Ouachita Parish. The transactions were made pursuant to an undercover investigation of the defendant launched by the Metro Narcotics division of the Ouachita Parish Sheriff's Office. Vincent Throckmorton, a confidential informant for Metro Narcotics, arranged both transactions. An undercover agent and volunteer officer with Metro Narcotics, Kim McDuffey, was also present during the purchases.
On the June 15th purchase, Throckmorton and Officer McDuffey met the defendant in the parking lot of Marvin's Mini-Mart located off Highway 594 in Ouachita Parish. Officer McDuffey wore a body wire which was monitored by Detective Purvis and Detective Chase, and she carried a micro-cassette recorder. Officer McDuffey testified that when the defendant arrived, she and Throckmorton approached the defendant's car, and she gave the defendant $40 in exchange for a package of marijuana. She also testified that she asked the defendant "Forty dollars, right?" and the defendant replied "Right." However, on the tape of the transaction played for the jury, this exchange was made between Officer McDuffey and Throckmorton before the defendant arrived at the scene. Although there is a lot of distortion and background noise on the tape, the conversations that are audible are between Officer McDuffey and Throckmorton, and between Throckmorton and the defendant. There is no audible conversation between the defendant and Officer McDuffey.
The defendant testified that on June 15, 1993, Throckmorton called him and told him to meet him at the store on Swartz Road and to bring a bag of marijuana. The defendant testified that upon arriving at the store parking lot, he sold the bag of marijuana to Throckmorton and not to Officer McDuffey. He testified that Officer McDuffey remained in her truck. Throckmorton told the defendant that he was going to sell the marijuana to Officer McDuffey.
On July 8, 1993, Officer McDuffey and Throckmorton drove to the defendant's apartment at Bream Bayou Apartments on Jennifer Lane in Monroe, Louisiana. Again she was equipped with a body wire, which was monitored by Detective Purvis and Detective Chase, and a micro-cassette recorder. She testified that she and Throckmorton entered the defendant's apartment where she gave the defendant $40 for a bag of marijuana. She testified that there was no conversation between herself and the defendant during this transaction. The tape of this transaction was not played for the jury or entered into evidence.
The defendant testified that on July 8, 1993, Throckmorton was at the apartment when someone called. He testified that Throckmorton took a bag of marijuana, delivered it to someone, and brought the money back to him. The defendant testified that Officer McDuffey never entered his apartment. In an attempt to impeach Officer McDuffey's testimony, the defendant testified that Officer McDuffey's description of his apartment was not accurate. Manuel Navarro, a defense witness, also testified that Officer McDuffey's description of the defendant's apartment was not accurate.
The substance delivered on each occasion was tested and determined to be marijuana. Officer McDuffey picked the defendant out of a photographic line-up on June 17, 1993. *1245 The defendant was arrested on March 7, 1994 and charged with two counts of distribution of marijuana.
During his trial, the defendant admitted to selling the marijuana on the dates in question but raised the affirmative defense of entrapment. The jury convicted the defendant as charged. The trial court sentenced the defendant to serve ten years at hard labor on each count, to run concurrently. Additionally, the court imposed a $500 fine on each count, and directed the defendant to pay court costs or spend ninety days in jail upon default of payment of the fines and court costs. The defendant filed a timely motion to reconsider sentence which was denied.

DISCUSSION
In his assignments of error, the defendant contends that there was insufficient evidence upon which to base his convictions, and that the sentence imposed is excessive. After reviewing the record, we find that the prosecution presented sufficient evidence to support the convictions, and that the sentence, while not excessive, should be amended.

ENTRAPMENT DEFENSE
In challenging the sufficiency of the evidence, the defendant does not deny that he sold marijuana on the dates in question. Rather, the defendant alleges that there was insufficient evidence upon which to base his conviction, because he was the victim of entrapment by Throckmorton, a state agent. The defendant also alleges that he distributed the marijuana to Throckmorton and not to Officer McDuffey.
Entrapment occurs when a state agent, to obtain evidence of the commission of an offense, solicits, encourages, or otherwise induces another person to engage in conduct constituting an offense when he is not otherwise predisposed to commit such an offense. State v. Tate, 593 So.2d 864 (La. App.2d Cir.1992); State v. Batiste, 363 So.2d 639 (La.1978). The entrapment defense is composed of two elements: 1) an inducement by a state agent to commit an offense, and 2) lack of predisposition to commit the offense on the part of the defendant. The United States Supreme Court has held that "where the Government has induced an individual to break the law and the defense is entrapment,..., the prosecution must prove beyond a reasonable doubt that the defendant was disposed to commit the act prior to first being approached by Government agents." Jacobson v. United States, 503 U.S. 540, 548-49, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174 (1992); see also U.S. v. Byrd, 31 F.3d 1329 (5th Cir.1994).
The United States Fifth Circuit has stated the burden of proving entrapment as follows:
The first step in a successful entrapment defense is to make a prima facie showing that "government conduct `created a substantial risk that an offense would be committed by a person other than by one ready to commit it.'" Once a defendant clears this hurdle, he is entitled to jury instructions on the issue ... After the defendant satisfies this threshold requirement, the burden shifts to the government to "prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents." U.S. v. Hudson, 982 F.2d 160 (5th Cir.1993), (citations omitted).
Thus, the burden of proof is on the defendant to raise the defense of entrapment and produce a preponderance of evidence that a state agent induced him to commit a crime. Once the defendant meets this burden, the state has the burden of proving beyond a reasonable doubt that the defendant was predisposed to commit the crime prior to government involvement.
The question of whether a government agent induced an innocent person into committing a crime is one for the jury. See State v. Brand, 520 So.2d 114 (La.1988); State v. Tate, supra. On appeal, contentions of entrapment are reviewed under the standard established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, supra. The initial inquiry is whether the defendant proved, by a preponderance of the evidence, that he had been persuaded to commit the act. If this is found, the next inquiry is whether the state *1246 adduced evidence of the defendant's predisposition to commit the crime such that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that it was the defendant's predisposition to commit the crime and not the government's inducement which caused the conduct in question.
Credibility determinations are largely within the jury's province. The reviewing court should accord great deference to the jury's decision to accept or reject the testimony of a witness. State v. Flowers, 574 So.2d 448 (La.App.2d Cir.1991), writ denied, 580 So.2d 666 (La.1991).
In the instant case, the trier of fact could have found that the defendant did not establish the first element of the entrapment defense. The defendant alleges that prior to Throckmorton's involvement, he was not selling marijuana. Thus, he relates his claim of state inducement to his initial contact with Throckmorton. According to the defendant, Throckmorton started coming to his house in April of 1993 and discussing purchasing a quarter pound of marijuana in Dallas for $200. Initially, the defendant told Throckmorton that he was not interested. The defendant testified that the reason he was not interested was because he had a job and was "doing pretty good." The defendant also testified that Throckmorton discussed purchasing the marijuana with him at least ten times over a period of two months, that Throckmorton promised to help the defendant sell the marijuana, and that he decided to sell because he was "in need of money," and because Throckmorton kept putting him down. Furthermore, the defendant testified that it was Throckmorton who arranged the purchase of marijuana in Dallas, and that he did not know who Throckmorton's Dallas contact was.
Manuel Navarro, a defense witness, also testified that Throckmorton talked the defendant into selling marijuana. However, Navarro testified that he never heard Throckmorton talk to the defendant about selling drugs, nor did he ever hear the defendant say that he was not interested in selling. Another defense witness, Gloria Wall, testified that she worked undercover with Metro Narcotics, and that she was told to do whatever she had to do to "get" the defendant. However, Wall also testified that she knew the defendant only through casual contact. She never testified that she knew anything about the defendant selling drugs or that she had ever attempted to consummate a drug transaction with him. The defendant testified that he had no contact of any kind with Wall.
Throckmorton testified that he talked to the defendant about selling marijuana quite a few times, and that the defendant was not selling marijuana when Throckmorton first approached him. However, he also testified that the defendant eventually decided to sell, that it was the defendant's idea to travel to Dallas to purchase marijuana to sell, and that the defendant knew the Dallas contact.
It is well established that the entrapment defense will not be recognized when the law enforcement officer merely furnishes the defendant with the opportunity to commit a crime to which he is already predisposed. Jacobson v. United States, supra. Here, Throckmorton and Officer McDuffey gave testimony about charged offenses which disputed the defendant's testimony. Throckmorton also contradicted the defendant's story of which of the two men were responsible for the first distribution transaction in Dallas, Texas.
Therefore, regarding the defense of entrapment, and more specifically, the threshold issue of state inducement, the jury obviously believed the state's witness, Throckmorton, rather than the defendant and his witnesses. This credibility determination is supported by the record. Thus, the jury had sufficient evidence to reasonably conclude that the defendant was not induced by the state to sell marijuana on the dates charged, but was predisposed to do so.
Because the defendant failed to prove state inducement to commit the crimes of distribution of marijuana, his affirmative defense of entrapment must fall. Consequently, we hold that there was sufficient evidence that the defendant was guilty of the crimes of *1247 distribution of marijuana, and affirm his convictions on both counts.

EXCESSIVE SENTENCES
In his second assignment of error, the defendant contends his sentences are excessive, and that the trial court failed to consider his economic hardship at the time of the offenses and state's involvement in the charged offenses as mitigating factors. After a review of the record, we find that although the length of defendant's sentences are not excessive, the portion of the sentences directing him to spend time in jail if he fails to pay the fines and court costs is in error.
Under the Louisiana Sentencing Guidelines,[1] the trial judge must consider the guidelines, but the judge has complete discretion to reject them and impose any sentence within the statutory range that is not constitutionally excessive. State v. Smith, 93-0402 (La. 7/5/94), 639 So.2d 237. The court need only state for the record the considerations taken into account and the factual basis for the imposition of sentence. LSA-C.Cr.P. Art. 894.1; State v. Smith, supra. When a judge complies with these requirements, the appellate court reviews only for constitutional excessiveness, without regard as to whether the trial judge employed or deviated from the guidelines. State v. Smith, supra; State v. Farley, 26,377 (La. App.2d Cir. 9/21/94), 643 So.2d 300; State v. Walters, 26,647 (La.App.2d Cir. 12/7/94), 648 So.2d 7.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Richardson, 545 So.2d 714 (La.App.2d Cir.1989). A trial court has wide discretion to sentence within the statutory limits. Absent a showing a manifest abuse of discretion, this court will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Madison, 535 So.2d 1024 (La.App.2d Cir. 1988); State v. Thompson, 25,583 (La.App.2d Cir. 1/19/94), 631 So.2d 555.
In the present case, the maximum sentence that could have been imposed is thirty years at hard labor on each count. LSA-R.S. 40:966(B)(2). The record shows that the trial judge was aware of and considered the defendant's background and criminal history.[2] After stating that he found no mitigating or aggravating circumstances and that he considered the two offenses to be part of a common scheme or plan, the judge sentenced the defendant to the maximum sentence recommended by the guidelines and ordered that the sentences run concurrently. Furthermore, the factors listed by the defendant are not mitigating factors listed in guidelines. These factors are more properly considered by the jury in determining the defendant's guilt or innocence. We find no abuse of the trial court's discretion in sentencing this defendant. Further, the sentences imposed do not shock one's sense of justice. Therefore, the sentences are not constitutionally excessive.
However, the trial court erred in imposing default time for failure to pay the fine and court costs. An indigent person may not be incarcerated because he is unable to pay a fine which is part of his sentence. Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); State v. Monson, 576 So.2d 517 (La.1991). A defendant's claim of indigence in such a situation may be discerned from the record. State v. Conway, 604 So.2d 205 (La.App.2d Cir.1992); State v. Williams, 484 So.2d 662 (La.1986). The record shows that the defendant was and is an indigent. Defendant was represented at trial *1248 and on appeal by the indigent defenders' office. Therefore, the portion of the sentence imposing additional jail time for failure to pay the fine is vacated.

ERRORS PATENT
We have also reviewed the record for error patent. A review of the sentencing transcript reveals that the trial court failed to give the defendant credit for time served as provided for by LSA-C.Cr.P. Art. 880. The defendant's sentence is further amended to allow for such credit. State v. Butler, 25,563 (La.App.2d Cir. 1/19/94), 631 So.2d 22; State v. Hughes, 587 So.2d 31 (La.App.2d Cir. 1991), writ denied, 590 So.2d 1197 (1992).
The record also reveals that the sentencing court improperly informed the defendant that the prescriptive period for post-conviction relief is "three years from today." The three-year prescriptive period does not begin to run until the judgment is final under LSA-C.Cr.P. Art. 914 or 922; thus, prescription has not yet begun to run. State v. Mock, 602 So.2d 776 (La.App.2d Cir.1992); State v. Gladney, 626 So.2d 778 (La.App.2d Cir.1993). The trial court is directed to send appropriate written notice of the correct prescriptive period to the defendant within ten days of the rendition of this opinion, and to file proof of defendant's receipt of such notice in the record of these proceedings. State v. Mock, supra; State v. Smith, 600 So.2d 745 (La.App.2d Cir.1992).

CONCLUSION
The defendant's convictions are affirmed. The portion of the sentence requiring the defendant to spend time in jail upon default of payment of the fine and court costs is vacated, and the sentences are further amended to allow the defendant credit for time served. The trial court is ordered to send the defendant correct information regarding the prescriptive period for post-conviction relief and file proof of the defendant's receipt of such notice in the record of these proceedings.
AFFIRMED AS AMENDED.
NOTES
[1] The Louisiana Sentencing Guidelines were repealed by Acts 1995, No. 942, effective August 15, 1995. However, the Guidelines were in effect when sentence was imposed.
[2] The defendant is a fourth felony offender, and also has three misdemeanor convictions.