LOLLEY, J.
| iThis criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana. The defendant, Jerome Bryant, Jr., was found guilty, following a bench trial, of simple burglary of an inhabited dwelling (a violation of La. R.S. 14:62.2) and aggravated burglary (a violation of La. R.S. 14:60). Bryant was subsequently adjudicated a second-felony offender and sentenced to serve 25 years at hard labor, without the benefit of parole, probation or suspension of sentence for the aggravated burglary conviction, and 12 years at hard labor for the simple burglary of an inhabited dwelling conviction, the first year of which to be served without benefit of parole, probation, or suspension of sentence. The trial court ordered the sentences to run concurrently to one another. Additionally, the defendant was ordered to pay court costs, or in lieu of such payment, to serve an additional 30 days in the parish jail. Bryant appeals his convictions and sentences.
Facts
On March 11, 2009, by three separate bills of information, Bryant was charged *756 with two counts of simple burglary of an inhabited dwelling, in violation of La. R.S. 14:62.2, and one count of attempted second degree murder, which was later amended to aggravated burglary, in violation of La. R.S. 14:60.
In November 2010, Bryant’s bench trial commenced. The state called Corporal Diane Coleman of the Shreveport Police Department as its first witness. Corporal Coleman testified that she received a call on February 5, 2009, regarding shots fired at a home on Pennsylvania Avenue in | j>Shreveport. When she arrived at the house, Jason Goetz, the homeowner, told her that he had been at home with his young daughter and heard a noise at the back door. When he went to investigate, a black male was standing in the doorway and shot at him.
Corporal Coleman testified that in the course of her investigation, she interviewed Sarah Knots, a witness who told Cpl. Coleman that on her way home from school she had seen a white Crown Victoria with dark tinted windows driving very slowly down Pennsylvania Avenue. Some time after seeing the vehicle, Knots heard two gun shots.
The state called Sarah Knots as its next witness. Knots corroborated Cpl. Coleman’s testimony by verifying that she had seen the white Crown Victoria on February 5, 2009, on Pennsylvania Avenue. The windows on the vehicle were tinted and the front license plate was a blue Ford license plate. The car stayed stopped at a stop sign for several seconds to let Knots pass. A little while later, Knots heard two gunshots. During the investigation, when Knots was later shown the vehicle, she positively identified the Crown Victoria as the car she saw.
Officer Joseph Anthony Dews, a supervisor for the Shreveport Police Department, was then called to testify. Officer Dews stated that he responded to a burglary complaint on East Washington Street in Shreveport in February 2009. The homeowner, Carolyn Jones, told Officer Dews that when she returned home that morning, her front door was unlocked and her house had been burglarized. The back door had been kicked open. Officer Dews photographed a shoe print on the outside of the back door, and ^another officer obtained a full hand print from inside the house. Several guns, a laptop and an iPod were taken from the home. ■
The state called Deandrae Jackson, Bryant’s codefendant, as its next witness. Jackson had previously pled guilty to illegal possession of stolen things for his part in the burglaries and was sentenced to serve 10 years at hard labor, suspended, with four years of probation.
Jackson testified that he was with Bryant on February 5, 2009, and that they were driving Jackson’s stepfather’s car, a white Crown Victoria with tinted windows. Jackson admitted that items found in the vehicle — a flat screen television, video games, a mink coat, a printer, a digital camera, an iPod, a Nintendo Wii, and some guns — had been stolen from various homes; however, he claimed he could not remember the exact addresses of the homes. Jackson also testified he drove the Crown Victoria while Bryant entered the homes and brought the valuables out to the vehicle. Jackson testified that when Bryant returned from the house on Pennsylvania Avenue, Bryant told Jackson to “go, go, go.” Jackson refused to admit that he told police that Bryant told him that he shot at someone, despite the fact he had previously testified to such at his guilty plea hearing.
The state then played the recorded video testimony of Jason Goetz, the homeowner at 433 Pennsylvania Avenue, who *757 was serving in Afghanistan at the time of the trial. Goetz testified that he was home with his two-year-old daughter when he heard a noise at the back door. He went to the back door, which was actually a set of French doors. Because the blinds were halfway down on the doors, he could see the pants of the person |4standing at the door. Suddenly, the doors were kicked in and a young blackman was standing with a gun in his hand. The young man raised the gun, holding it sideways, and fired off two shots aimed at Goetz, that missed. According to Goetz, he and the shooter met eye-to-eye. Goetz testified that after the shooter fired the shots, he fled, and Goetz ran to check on his daughter. Peeking out of the blinds in her room, he saw the shooter run to a light-colored vehicle to flee. Goetz testified that the shooter never entered the house, but shot from a step outside, which was lower than the house. Detectives later found the bullets on Goetz’s floor, about eight or ten feet from where Goetz had been standing. Goetz identified Bryant as the shooter.
After watching the shooter drive away, Goetz called police and gave a statement. Goetz was later taken by police to a location where some suspects had been apprehended. Goetz immediately identified Bryant as the shooter. During his testimony, he reiterated his confidence that Bryant was the shooter, because he looked him in the eyes at the time.
The state called Damon Jordan, the homeowner of a house at 146 Patton Avenue, in Shreveport, Louisiana, to testify. Jordan explained that on February 5, 2009, his home was burglarized some time after 8:00 a.m., after he and his wife had left for work. Some time later that afternoon, when his son returned home from high school, he discovered that several items were missing from the home. Jordan recalled specifically that games for a Wii console, a camcorder, a printer, a digital camera, a mink coat, a | r,pellet gun and two iPods had been stolen. Jordan opined that the burglars had entered through the back door, which was unlocked.
The state called Detective Rachel Alkire, with the Shreveport Police Department, to testify next. Detective Alkire stated that on February 5, 2009, she received a call regarding a burglary on Pennsylvania Avenue. Shortly thereafter, Det. Alkire and her partner noticed a vehicle matching the description of the one involved in the burglary traveling west on 85th Street in Shreveport. The detectives followed the Crown Victoria until it stopped at a residence on David Street. Detective Alkire then saw two black males in dark clothing standing at the rear of the vehicle looking into the trunk. The detectives drove around the block and when they returned they noticed that the front license plate matched the one described by witness Sarah Knots. Detective Alkire and her partner immediately called for backup and waited down the street. When additional officers arrived, they returned to the house and saw two black males standing outside. One of them, later identified as Bryant, took off running, but was apprehended hiding in a doghouse down the street. Police also arrested Deandrae Jackson and interviewed Bryant’s younger brother, Ka-tryle Bryant. Police later determined that Katryle was not involved with the burglaries.
According to Det. Alkire, Jackson’s mother’s boyfriend, the owner of the Crown Victoria, gave police consent to search the vehicle. Inside, police found a pellet gun, a .38 caliber revolver, a fur coat, various remote controls for televisions and a Wii console, a printer, a camcorder, a Wii console, two laptops, some Wii games, televisions, a DVD player, four | r,iPods, a cell phone, a digital camera, a *758 GPS charger, a herringbone necklace, a Nintendo game, a suitcase and several DVDs. A majority of the items came from the house at 146 Patton Avenue. There were also items that had been taken from a house at 1123 East Washington Street, in Shreveport. It was later discovered that the .38-caliber revolver came from a home at 3312 Gorton Street. Detective Alkire.testified that the burglaries at East Washington Street and Patton Avenue both occurred on the same day as the burglary at Pennsylvania Avenue.
Detective Alkire explained that following his arrest, Jackson gave a statement to police. He first told police that he met Bryant at a vacant house in Mooretown-, where Bryant loaded several of the stolen items into the car. He stated that after the two left Mooretown, he dropped Bryant off at the home on Pennsylvania Avenue. A short time later, Bryant returned to the car and told Jackson to drive because he had shot at someone. Police searched Jackson and found two pieces of a Wii console in his pockets; he admitted they came from the Wii console that Bryant had stolen. Police concluded that Jackson’s story was unbelievable because it provided inadequate time to commit the burglary on Pennsylvania Avenue.
Detective Alkire testified that the keys to the Crown Victoria were found in the pathway Bryant used to escape police. Bryant could not explain why the keys were found there. Police also discovered that Bryant was wearing a watch that had been stolen in an earlier unrelated burglary, and that he had Jackson’s cell phone. Bryant denied to the police involvement in any of the burglaries.
|vAt the conclusion of Det. Alkire’s testimony, the state rested, and Bryant requested a directed verdict. He argued that the state failed to prove that he actually entered the home on Pennsylvania Avenue. The state countered that Bryant had entered the home when his foot kicked the door open, or that his hand had entered when he pointed the gun inside the house, - or that he fired - á gun and the projectile entered the home. The trial court denied the request for a directed verdict, and the defense rested.
The trial court found Bryant guilty of both aggravated burglary and simple burglary of an inhabited dwelling. Subsequently, the state filed a habitual offender bill of information charging Bryant as a second-felony offender in regard to his conviction for aggravated burglary. Specifically, the habitual offender bill alleged that Bryant pled guilty to simple burglary on October 25, 2007.
In January 2011, Bryant appeared and pled guilty to being a second-felony offender. After Bryant waived sentencing delays, the trial court sentenced him to serve 25 years at hard labor without the benefit of probation or suspension of sentence for the aggravated burglary conviction. For his simple burglary of an inhabited dwelling conviction, Bryant was sentenced to serve 12 years at hard labor, with the first year being served without the benefit of parole, probation or suspension of sentence. The sentences were ordered to run concurrently to one another. The trial court also specified that if Bryant failed to pay court costs for either conviction, he would be subject to a 30-day parish jail sentence.
IsBryant filed a motion to reconsider sentence, alleging that the imposed sentences were excessive, which motion was denied. He also filed a motion for appeal, which was granted the same day, and this appeal ensued.
DISCUSSION

Sufficiency of the Evidence

Bryant was convicted of two different crimes, and he argues that the evidence *759 adduced at trial was insufficient on each to convict him. Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such eases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.09/25/98), 719 So.2d 610, writ denied, 1998-2723 (La.02/05/99), 737 So.2d 747. When a conviction is based on circumstantial evidence, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; State v. Baker, 46,089 (La.App.2d Cir.03/02/11), 58 So.3d 571.
The trier of fact is charged to make a credibility evaluation and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Sosa, 2005-0213 (La.01/19/06), 921 So.2d 94. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Higgins, 2003-1980 (La.04/01/05), 898 So.2d 1219, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005).

Simple Burglary of an Inhabited Dwelling

Bryant contends that the state failed to prove that he committed simple burglary of an inhabited dwelling of the home at 146 Patton Avenue. In support of his claim, Bryant cites the trial testimony of Dean-drae Jackson, his partner in crime, who denied seeing Bryant at the Patton Avenue address. Bryant concedes that Jackson testified to remembering Bryant taking property from a home, but notes that Jackson could not remember the address. Further, Jackson earlier told police that Bryant loaded the stolen property from a vacant house in Mooretown. Bryant notes | mthat the homeowners of the Patton Street address did not identify him and that no fingerprints were taken from the home.
Simple burglary of an inhabited dwelling is the unauthorized entry of any inhabited dwelling, used as a home, with the intent to commit a felony or any theft therein. La. R.S. 14:62.2.
Here, the evidence adduced at trial was sufficient to prove that Byrant committed simple burglary of the inhabited dwelling located on Patton Avenue. Jackson told police that Bryant had been riding with him in the white Crown Victoria on February 5, 2009. He also testified at trial that Bryant had gone to some unspecified homes, entered the homes, and taken various items from the homes. Bryant put those items in the Crown Victoria.
Jordon, the homeowner of 146 Patton Avenue, testified that someone came in through the back door of his home and stole a television, mink coat, digital cam *760 era, camcorder, a Wii console and games, a pellet gun, a laptop computer and some iPods. Some of the items taken from Jordan’s home were later discovered in the Crown Victoria vehicle in which Bryant had ridden with Jackson. The Crown Victoria vehicle was linked to Bryant by the testimony of Knots, who saw the white Crown Victoria on Pennsylvania Avenue before she heard shots, and Goetz, who saw Bryant jump into a light-colored vehicle parked outside his residence on Pennsylvania Avenue after the shooting. Detective Alkire and her partner discovered a white Crown Victoria matching the description by Knots and saw two young black men looking in the trunk. When officers arrived, one of the men, later | , identified as Bryant, immediately took off running and hid in a neighbor’s doghouse. While tracking Biyant’s path, police found the keys to the Crown Victoria; Bryant could not explain why the keys were there. When police obtained consent to search the Crown Victoria, they discovered several of the items taken from the house at 146 Patton Avenue.
The trial court heard the witness testimony, and it acted within its reasonable discretion in accepting that testimony. The foregoing facts, when viewed in a light most favorable to the prosecution, are sufficient for a rational finder of fact to conclude that Bryant committed simple burglary of the inhabited dwelling on Patton Avenue and exclude every reasonable hypothesis of innocence. Therefore, this assignment has no merit.

Aggravated Burglary

As to Bryant’s conviction for the aggravated burglary on Pennsylvania Avenue, Bryant alleges that the evidence adduced at trial was insufficient to prove that he committed the crime. In support, Bryant argues that he never actually entered the residence, but stood outside. He points to the testimony of Jason Goetz, who stated that .Bryant never entered his home, but fired shots from outside.
Aggravated burglary is the unauthorized entering of any inhabited dwelling with the intent to commit a felony or any theft therein, if the offender is armed with a dangerous weapon. La. R.S. 14:60.
For purposes of showing “unauthorized entry,” the prosecution need only prove that any portion of the defendant’s body passed the line of the door’s threshold. State v. Hogan, 33,077 (La.App.2d Cir.03/01/00), 753 So.2d 965, citing State v. Abrams, 527 So.2d 1057 (La.App. 1st Cir.1988), writ denied, 625 So.2d 164 (La.1993).
The prosecution asked Goetz specifically: “Did Mr. Bryant actually get to enter your house?” To which, Goetz replied, “No, sir.” Goetz also described that Bryant was “outside” the house when he shot. As described by Goetz, there was a step into his house from the driveway, and Bryant was standing lower than the house when he shot at Goetz. On cross-examination, Goetz reiterated that Bryant never entered his home. Although Goetz described that he witnessed Bryant kick the door, he did not state he saw any part of Bryant’s body cross the plane into his dwelling. Nor did the state present any evidence that in order to kick in Goetz’s door, Bryant’s foot or leg would have necessarily entered into the house. The prosecution simply failed to present any evidence that any portion of Bryant’s body crossed the plane into Goetz’s dwelling.
Whereas the state argues that an entry occurred because Bryant’s foot necessarily would have crossed the plane into Goetz’s home when the door was kicked in, this is merely speculative. There was no evidence what amount of force was necessary for Bryant to have kicked in the door, let *761 alone evidence of whether his foot would have crossed the plane to satisfy the entry requirement for burglary. Goetz testified that Bryant never entered the house and that Bryant stood outside when he shot at Goetz. Had the prosecution simply inquired whether Bryant’s foot had crossed the threshold when the door was kicked open (and assuming the answer would have been “yes”), the state would have met its burden of proving that an unauthorized 1 gentry had occurred. Without any evidence of an entry, an essential element of any burglary charge, there can be no conviction of aggravated burglary. Accordingly, Bryant’s conviction for aggravated burglary was in error, and it is set aside.
Moreover, Bryant’s conviction for aggravated burglary was used as the second offense in his second felony habitual offender charge, to which he pled guilty. As a result of reversing the aggravated burglary conviction, there is no basis for the habitual offender charge, and that conviction must necessarily also be set aside.
When a conviction is reversed for insufficiency of the evidence, an appeal court has the authority to review the record and enter a conviction for a lesser-included offense when such conviction is supported by the record. State v. Byrd, 385 So.2d 248 (La.1980); State ex rel. D.J., 2008-345 (La.App. 3d Cir.08/28/08), 995 So.2d 1. Louisiana C.Cr.P. art. 814(A)(42) enumerates the responsive verdicts to aggravated burglary, listing “guilty of attempted aggravated burglary” as a responsive verdict to aggravated burglary. Here, our review of the record shows that the evidence at trial was sufficient to convict Bryant of the lesser and included offense of attempted aggravated burglary.
Pursuant to La. R.S. 14:27, an “attempt” is defined in pertinent part as follows:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
l14In order to be found guilty of attempted simple burglary, Bryant must have had specific intent to enter the house without authorization, with specific intent to commit a felony or any theft inside, while armed with a dangerous weapon. A conviction of the underlying felony is not required. State v. Guidry, 1994-596 (La.App.3d Cir.11/02/94), 649 So.2d 486, writ denied, 1994-2953 (La.03/17/95), 651 So.2d 267, citing State v. Mills, 505 So.2d 933 (La.App. 2d Cir.1987), writ denied, 508 So.2d 65 (La.1987). Here, considering the evidence of record, it is apparent Bryant had the intent to enter Goetz’s house— Goetz witnessed him forcibly break the door in, even though the evidence did not show he actually entered the house. See State v. Holmes, 2006-2988 (La.12/02/08), 5 So.3d 42, 65. Additionally, it is also apparent that Bryant had the intent to commit a felony inside the house, while armed with a dangerous weapon. When viewing the evidence presented at trial in the light most favorable to the prosecution, it is difficult to imagine any hypothesis that does not include the specific intent to commit a felony or theft therein. Moreover, after firing at Goetz, Bryant fled the scene, which supports an inference of Bryant’s guilty conscience. See State ex rel. B.A.A., 44,494 (La.App.2d Cir.05/20/09), 13 So.3d 1183. Finally, it is undisputed that Bryant was armed with a dangerous weapon — Goetz testified to this fact and bullets were retrieved from Goetz’s house. There was no evidence presented to contradict this. So considering, the record in this case supports a conviction for the lesser- *762 included offense of attempted aggravated burglary.

Sentencing

| ifiBryant contends that his sentences are excessive. He argues that the trial court failed to explain its reasons for imposing the sentences, and that he received the maximum allowable for his simple burglary of an inhabited dwelling conviction. Because his convictions for aggravated burglary and second felony habitual offender have been set aside, Bryant’s sentence flowing from those convictions is vacated. Thus, we will only consider his sentence for his conviction of simple burglary of an inhabited dwelling.
There is a two-part inquiry for appellate review of sentences for exces-siveness when there is a substantive motion for reconsideration. First, the record must show that the sentencing court complied with La.C.Cr.P. art. 894.1. The court need not list every aggravating or mitigating factor so long as the record reflects that it adequately considered the guidelines. State v. Marshall, 1994-0461 (La.09/05/95), 660 So.2d 819; State v. Cass, 46,228 (La.App.2d Cir.04/13/11), 61 So.3d 840. When the record shows an adequate factual basis for the sentence imposed, remand is unnecessary even in the absence of full compliance with the article. State v. Lobato, 603 So.2d 739 (La.1992); State v. Cass, supra. The second prong is the constitutional excessiveness standard. Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense, or shocking to the sense of justice. State v. Lobato, supra.
Simple burglary of an inhabited dwelling carries a sentence of imprisonment at hard labor for not less than one year, without the benefit of parole, probation or suspension of sentence, nor more than 12 years. La. R.S. 14:62.2.
|1fiThe sentence imposed in the instant matter is not excessive when considering all of the circumstances involved. Although the trial court did not articulate its reasons for imposing the sentence, the record provides an adequate factual basis for the imposed sentence. Specifically, Bryant had a criminal history which included a felony conviction for simple burglary on October 25, 2007. Additionally, evidence adduced at trial tended to show that Bryant had committed other burglaries, including one at East Washington Street — also on February 5, 2009. Furthermore, Bryant created a risk of death or great bodily injury to Goetz and his small child when he fired shots into Goetz’s home on Pennsylvania Avenue. No mitigating circumstances were provided to the trial court, and Bryant fails to allege any in his appellate brief.
Neither is the sentence imposed constitutionally excessive. Although Bryant received the maximum sentence (12 years) for his simple burglary of an inhabited dwelling conviction, considering his propensity to commit such burglaries, the sentence is not excessive. This assignment of error is without merit.

Error Patent

An indigent defendant may not be subjected to imprisonment because he is unable to pay a fine which is part of his sentence. Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); State v. Monson, 576 So.2d 517 (La.1991); State v. Kerrigan, 27,846 (La.App.2d Cir.04/03/96), 671 So.2d 1242. A defendant’s claim of indigence in such a 117situation may be discerned from the record. State v. Williams, 484 So.2d 662 (La.1986); State v. Kerrigan, supra. This Court has considered it error for a trial court to impose jail time for failure to pay *763 court costs. See Kerrigan, 671 So.2d at 1247. The trial court ordered Bryant to serve a 30-day parish jail sentence upon default of his payment of court costs for both convictions. The record indicates that Bryant is indigent; therefore, that portion of his sentence is vacated.
Conclusion
For the foregoing reasons, the conviction and sentence of Jerome Bryant, Jr. for simple burglary of an inhabited dwelling are affirmed. His convictions for aggravated burglary and second felony habitual offender are set aside, and the matter is remanded to the trial court with instructions to enter a judgment of guilty of attempted aggravated burglary and to sentence him accordingly.
CONVICTION AND SENTENCE FOR SIMPLE BURGLARY OF INHABITED DWELLING AFFIRMED; CONVICTIONS AND SENTENCE FOR AGGRAVATED BURGLARY AND SECOND FELONY HABITUAL OFFENDER SET ASIDE AND REMANDED FOR ENTRY OF JUDGMENT OF GUILTY OF ATTEMPTED AGGRAVATED BURGLARY AND FOR SENTENCING.