COX, J.
_JjThe defendant, Rashad Montreal Turner (“Turner”), was charged with resisting a police officer with force or violence. Following a jury trial, a unanimous six-person jury found Turner guilty of the responsive verdict of attempted resisting a police officer with force or violence, in violation of La. R.S. 14:27 and La. R.S. 14:108.2(A)(3). He was sentenced to serve one year at hard labor, suspended; two years’ supervised probation; and was given a $750.00 fine or six months in parish jail in default of payment. Turner appealed his conviction based on insufficiency of the evidence. For the reasons stated below, we affirm Turner’s conviction. However, we respectfully amend the portion of Turner’s sentence that states he will spend six months in parish jail in default of payment of the $750.00 fine since Turner was and is an indigent. Rather, that portion of the sentence shall state that the $750.00 fine shall be imposed as a condition of Turner’s probation. As amended, we affirm.
FACTS
On December 5, 2013, Sergeant Gary White (“Sergeant White”) and Officer Thomas Harmon (“Officer Harmon”), officers of the Grambling State University Police, were called to the Holland Hall dormitory. The call indicated that a woman, later identified as Equasia Gallow (“Ms. Gallow”), had been thrown out into the hall of the dormitory by her boyfriend and that she was naked. Sergeant White and Officer Harmon responded and found Ms. Gallow in distress and crying, and it appeared she had been scratched. Ms. Gal- *604 low gave a statement to Sergeant White in which she stated that she and Turner, her boyfriend, were in his dorm room when they got into an argument over information he found on her cellphone. She stated that | ¿Turner threw her out of his dorm room without her pants on and then threw water in her face.
By this point, the officers had determined that Turner had left the dormitory, so they escorted Ms. Gallow and an eyewitness to the incident, Donathan Howard, to the university police station to get their statements. While Sergeant White took Ms. Gallow’s statement, Officer Harmon patrolled the area looking for Turner since the officers had been given a description of Turner and his vehicle. Officer Harmon eventually spotted Turner’s vehicle in a parking lot near the dormitory; both he and Sergeant White went into the building to locate Turner.
When the officers reached Turner’s dorm suite, they knocked on the door and identified themselves as the police. When the officers’ repeated knocking and announcements got no response, they had a resident assistant open the door to the suite. Once the officers entered the dorm suite, they again identified themselves and knocked on Turner’s bedroom door numerous times before Turner opened the door.
Sergeant White told Turner that he was under arrest for domestic abuse battery and read Turner his Miranda rights. Sergeant White then asked Turner to turn around and place his hands behind his back. After Sergeant White placed one cuff on Turner’s left arm, Turner jerked his right arm loose and refused to allow Sergeant White to cuff him. Sergeant White forced Turner onto the nearby bed, where he asked Turner multiple times to give him his right arm.[1] Turner tucked his right arm underneath his chest |.and refused to release his arm. At this point, Officer Harmon stepped in, and the officers were able to successfully place both cuffs on Turner.
Both officers escorted Turner downstairs to the police vehicle. Once they had reached the vehicle, Turner refused to get in after several requests by Sergeant White. Sergeant White told Turner that if he did not cooperate, he would be placed into the vehicle; Turner complied.
Upon reaching the police station, Sergeant White attempted to get more information from Turner. When asked his middle name, Turner responded with an expletive. When asked his date of birth, Turner told Sergeant White that he did not have one. Turner eventually complied with Sergeant White, and Sergeant White was able to get the information he needed to complete his report.
Turner was subsequently charged with the felony offense of resisting a police officer with force or violence, in violation of La. R.S. 14:108.2(A)(3). The trial court found Turner to be indigent and appointed counsel to represent him.
On March 27, 2015, Turner appeared before the court and the state’s plea offer was read into the record. The state offered to allow Turner to plead guilty to the reduced misdemeanor charge of resisting an officer, with a six-month suspended sentence and one year of supervised probation. Turner confirmed to the court that his attorney had communicated the state’s plea offer to him, but he declined the offer and chose to proceed to trial.
At trial, Sergeant White testified that he was not injured by Turner and that he did not feel threatened by Turner’s actions. Sergeant White stated that he had a safety interest in cuffing Turner because the dorm room |4was small, and he was not *605 sure what was located in the room that Turner could have grabbed. Sergeant White also testified that he believed Turner was trying to resist being handcuffed and not trying to injure him. He later conceded, however, that he did not actually know what Turner intended. Sergeant White agreed with the state’s argument that Turner had to know that the loose right hand cuff was attached to the cuff already on his left wrist when he jerked his arm free. Sergeant White stated that Turner’s snatching and whipping around of the loose cuff was also a concern because it could have been an attempt by Turner to injure him. Sergeant White testified that he knew of two instances where an officer was gruesomely injured with handcuffs.
Officer Harmon testified that Turner was twisting and flailing his left arm around in a dangerous manner. Officer Harmon conceded that Turner did not swing at Sergeant White or attack either of them. However, Officer Harmon believed Turner’s combativeness could have led to one or both of the officers being injured. He testified that Turner’s actions indicated that he did not want to be arrested or handcuffed and that this constituted resistance. Officer Harmon also testified that the metal handcuffs are dangerous because they are heavy and have a serrated edge, so swinging them around could cause an injury.
The trial court advised Turner of his right to remain silent and his right to testify; Turner chose to testify. Turner testified that he had obtained a degree in biology from GSU and that he was working to earn money to attend pharmacy school. He testified that he had never been handcuffed, arrested, or convicted of any crime.
jfiTurner testified that when he heard the officers knocking, he opened the door to find Officer Harmon, with a Taser in his hand, and Sergeant White, who told him to turn around.[2] Turner stated that as Sergeant White pulled his left arm behind his back, Sergeant White threw him onto the bed and lay on top of him, pinning Turner’s right arm underneath him. Turner testified that he squirmed and wriggled to free his right arm, and Sergeant White then cuffed his right wrist. He testified that he never hit or attempted to hit Sergeant White, nor did he ever try to injure him. Turner did admit, however, that he was initially uncooperative in answering questions because he did not like the way he was being treated.
At the end of the trial, the jury was instructed on the elements of the charged offense, as well as the elements of the responsive verdict of attempted resisting a police officer with force or violence. The court advised the jury that, based on the jury’s finding of fact, the jury could find Turner guilty as charged, guilty of the responsive verdict of attempted resisting with force or violence, or not guilty. The jury returned the responsive verdict of guilty of attempted resisting with force or violence. Turner’s counsel requested to poll the jury, and the unanimous verdict was confirmed.
Turner was sentenced to the minimum of one year at hard labor, suspended, with supervised probation for two years, subject to the conditions of probation.[3] The court *606 imposed a fine of $750.00, plus all costs of the proceeding. In default of payment, Turner would spend an additional six 16months in the parish jail. The court ordered that the “unserved portion” of his jail sentence was suspended. The court also ordered Turner to spend 15 days in the parish detention center, subject to public works, but stated that this time could be served ’on the weekends. The defense advised the court that Turner now resides in Georgia. The judge ruled that Turner’s probation and parole could be transferred to Georgia as long as Turner made himself available for the proceedings on the misdemeanor charge of domestic abuse battery.
On September 22, 2015, Turner moved to appeal his conviction. The order was granted on April 6,2016.
LAW
The proper test for determining a claim of insufficiency of the evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The standard for appellate review for á sufficiency of the evidence claim is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Tate, 01-1658 (La. 5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Crossley 48,149 (La. App. 2 Cir. 6/26/13), 117 So.3d 585, writ denied, 13-1798 (La. 2/14/14), 132 So.3d 410. This standard does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La. 2/22/06), 922 So.2d 517; State v. Crossley, supra; State v. Dotie, 43,819 (La. App. 2 Cir. 1/14/09), 1 So.3d 833, writ denied, 09-0310 (La. 11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh the evidence. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La. App. 2 Cir. 2/25/09), 3 So.3d 685, writ denied, 09-0725 (La. 12/11/09), 23 So.3d 913, cert. denied, 561 U.S. 1013, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010); State v. Hill, 42,025 (La. App. 2 Cir. 5/9/07), 956 So.2d 758, writ denied, 07-1209 (La. 12/14/07), 970 So.2d 529.
Where there is conflicting testimony about factual matters, the x-esolution of which depends upon a determination of the credibility of the witnesses, the matter is. one of the weight of the evidence, not its sufficiency. State v. Glover, 47,311 (La. App. 2 Cir. 10/10/12), 106 So.3d 129, writ denied, 12-2667 (La. 5/24/13), 116 So.3d 659; State v. Speed, 43,786 (La. App. 2 Cir. 1/14/09), 2 So.3d 582, writ denied, 09-0372 (La. 11/6/09), 21 So.3d 299. The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness in whole or in part; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La. 1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S. Ct. 104, 148 L.Ed.2d 62 (2000); State v. Woodard, 47,286 (La. App. 2 Cir. 10/3/12), 107 So.3d 70, writ denied, 12-2371 (La. 4/26/13), 112 So.3d 837; State v. Hill, supra.
 IsTurner was charged with resisting a police officer with force or violence, *607 as defined in La. R.S. 14:108.2(A)(3), which states:
A. Resisting a police officer with force or violence is any of the following when the offender has reasonable grounds to believe the victim is a police officer who is arresting, detaining, seizing property, serving process, or is otherwise acting in the performance of his official duty:
⅜ ⅜ ‡
(3) Injuring or attempting to injure a poliee officer engaged in the performance of his duties as a police officer.
Turner was convicted of the responsive verdict of attempted resisting a police officer with force or violence. Attempt is defined in La. R.S. 14:27 as follows:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
Specific intent is defined in La. R.S. 14:10, which states, “Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. State v. Jones, 10-0762 (La. 9/7/11), 74 So.3d.197. The state has the burden of proving that the offender had specific intent to commit the crime and that the offender committed or omitted an act for the purpose of accomplishing his object. State v. Prine, 44,230 (La. App. 2 Cir. 5/20/09), 13 So.3d 758.
|9The finder of fact determines whether the offender had specific intent to commit the crime and whether the offender acted toward committing the offense by considering the totality of the circumstances. State v. Jones, supra; State v, Prine, supra. In State v. Jones, supra at 202, the Louisiana Supreme Court stated:
The overt act need not be the ultimate step toward or the last possible act in the consummation of the crime attempted, and it is the intent to commit the crime, not the possibility of success, which determines whether the act or omission constitutes the crime of attempt.
The Court also noted that a “physical overt act is generally required to constitute an attempt for most crimes.” Id. Finally, the Court added that a person may be found guilty of attempt as a responsive verdict even though the evidence shows he committed the actual crime charged. Id.
DISCUSSION
On appeal, Turner argues that there was insufficient evidence to support the offense charged, as well as the jury’s verdict of attempted resisting an officer with force or violence, because there, was no evidence that Turner injured, or had the general or specific intent to injure, Sergeant White, as required by La. R.S. 14:108.2(A)(3) and La. R.S. 14:27. However, we believe that the evidence was sufficient to support the jury’s finding that Turner was guilty of attempted resisting a police officer with force or violence.
The first element that the state was required to prove under La. R.S. 14:108.2(A)(3) was that the victim in this case was a police officer. It is undisputed that Sergeant White and Officer Harmon were and are police Imofficers. Both officers testified that they were wearing attire that said “police” on the back, as well as hats with the poliee logo stitched on the *608 front. Additionally, when the officers knocked on the door to Turner’s dorm suite, as well as when they knocked on Turner’s bedroom door, the officers announced themselves as the police. Upon entering Turner’s bedroom, Sergeant White stated that he and Officer Harmon were both officers of the Grambling State University Police Department. Based on this evidence, we believe that a jury could have reasonably concluded that both Sergeant White and Officer Harmon were police officers.
The second element that the state was required to prove under La. 14:108.2(A)(3) was that the defendant had reasonable grounds to believe that the victim was a police officer who was arresting, detaining, seizing property, serving process, or acting in the performance of his' official duty. It appears clear that Turner had reasonable grounds to believe Sergeant White and Officer Harmon were police officers who were arresting him or acting in the performance of their official duties. Once the officers entered Turner’s bedroom, Sergeant White told Turner that he was being placed under arrest for the alleged domestic battery against Ms. Gal-low, and he read Turner his Miranda rights. Thus, there can be no doubt that Turner had reasonable grounds to believe that Sergeant White and Officer Harmon were police officers acting in the performance of their official duties. A jury reasonably could have found that the state proved the second element based on the evidence and testimony presented.
The final element that the state was required to prove under La. R.S. 14:108.2(A)(3) was that the defendant injured or attempted to injure a police | nofficer engaged in the performance of his duties as a police officer. While Sergeant White was attempting to place Turner under arrest, Turner jerked away from Sergeant White. At this time, only Turner’s left arm had been handcuffed. Sergeant White gave Turner multiple opportunities to comply by asking Turner to give him his right arm. Turner refused, and continued to jerk away and struggle with Sergeant White, flailing his left arm in the air. Turner had an open, dangling handcuff attached to his left arm.
Officer Harmon described Turner as combative during the arrest, pulling away from Sergeant White so that he could not successfully be restrained. As noted before, Sergeant White is 6’5‘, 480 pounds. For Officer Harmon to have to step in to assist Sergeant White in successfully restraining Turner, it is apparent that Turner was using a great deal of force in resisting Sergeant White. Additionally, Turner knew that the open handcuff was attached to his left arm, and he continued to flail and throw his left arm around in the air while also refusing to give Sergeant White his right arm. It thus appears that a jury could have reasonably found that Turner was attempting to injure the officers with the open handcuff.
Although Turner did not strike either officer, it should be noted that injury is not a requirement for conviction of this charge. Neither officer was injured, but Sei-geant White testified that the dangling cuff could be used as a weapon, and he stated that he has seen two officers injured in the face as a result of a similar incident. Additionally, both officers testified that they were concerned for their safety while Turner was struggling with Sergeant White. The officers both stated that Turner’s flailing of his left arm with the open handcuff attached to it could have caused one or both officers serious 112injury. It is important to again note that Turner was fully aware there was a dangling, open handcuff attached to his left arm at this time, as adduced in testimony.
*609 In State v. Musacchia, 13-169 (La. App. 5 Cir. 12/12/13), 131 So.3d 286, a case similar to this, the Fifth Circuit held that the evidence was sufficient to support both the charged offense of resisting an officer with force or violence, as well as the jury’s verdict finding the defendant guilty of the lesser and included grade of attempted resisting an officer with force or violence. The officer, in full uniform, was responding to a domestic disturbance call and asked the defendant what happened. Id. The defendant responded with “expletives, speaking with a belligerent, agitated tone, and took an aggressive stance” toward the officer. Musacchia, supra at 289. When the officer attempted to escort the defendant to a nearby vehicle, the defendant shoved the officer’s hand off of him, and took a swing at the officer. Id. After the officer attempted to secure the defendant and place him on the ground, a physical altercation ensued. Id. The altercation ended when a second officer intervened. Id.
Similar to the defendant in Musacchia, Turner continuously used expletives toward the officers and had an attitude. When asked his middle name, Turner responded with an expletive. Also, when Turner was asked his date of birth, he told the officers he did not have one. Turner did not provide the officers with important information that was needed to complete their report, which ultimately hindered their work. Additionally, Turner took an aggressive stance against Sergeant White when he stood stiffly straight in front of the door of the police vehicle and refused to get in.
11sAlthough Turner did not swing at either of the officers like the defendant in Musacchia, Turner did jerk his right hand away from Sergeant White while Sergeant White was attempting to place Turner under arrest. Turner continued to struggle with Sergeant White, and it was not until Officer Harmon stepped in that the officers were able to detain Turner. Also, while Turner was struggling to keep his right arm from Sergeant White, his left arm was flailing around with the open cuff attached to it. As stated earlier, this could have seriously injured either officer had one of them been hit.
Also similar to Musacchia, the trial judge in Turner’s case instructed the jury that if the state failed to prove the elements of the charged offense or of the lesser responsive verdict, it should return a verdict of not guilty. The trial judge in Musacchia instructed the jury in the same manner, and the court found that the trial judge “sufficiently informed the jury of its duty to acquit defendant if the evidence did not support each element of the charged offense of resisting a police officer with force or violence or the lesser responsive verdict of attempted resisting an officer with force or violence.” Musacchia, supra at 294. The jury in Turner’s case was thus adequately instructed and, if they did not believe Turner was guilty of either offense, they had the option to find him not guilty.
In another similar case, State v. Johnson, 47,632 (La. App. 2 Cir. 1/16/13), 109 So.3d 407, the officer testified that the defendant punched the officer in the stomach, was verbally aggressive and uncooperative, and failed to follow instructions. This Court found that the evidence was | sufficient to support the jury’s verdict of guilty of resisting an officer with force or violence. Id.
As stated earlier, Turner was verbally aggressive when he continued to use expletives toward the officers. Turner was also uncooperative in many ways. First, Turner did not open the door for Sergeant White and Officer Harmon when they arrived. After several minutes of knocking, the resident assistant had to be called to unlock *610 the main entrance to the dorm suite. Additionally, Sergeant White testified that Turner had an attitude from the moment the officers entered his bedroom. Second, Turner continued to be uncooperative with the officers as Sergeant White repeated the same knock and announcement on Turner’s bedroom door, which was locked. Turner still did not open the door for several minutes. In fact, it was not until Sergeant White threatened to have the resident assistant unlock Turner’s bedroom door that Turner finally opened it.
Sergeant White testified at trial that the knocking and announcement were loud enough to be heard by Turner through the interior door. Officer Harmon stated that the knocking was so loud that residents from down the hall were poking their heads out of their dorm rooms to see what was going on. Although Turner resided in a dorm suite with other residents, the officers were calling Turner’s name as they knocked, thus there could have been no doubt that the officers were there for Turner. Turner was simply being uncooperative in not opening the door. Finally, after successfully handcuffing Turner, the officers escorted him downstairs to the police vehicle where Turner continued to be uncooperative. Officer Harmon | ¶ ¿testified that Turner kept trying to pull away from them and was being verbally abusive.
Turner also repeatedly failed to follow instructions. Upon reaching the police vehicle, Sergeant White instructed Turner to get in, but Turner refused. Turner stood stiffly straight and still in front of the vehicle door and would not bend over to get into the vehicle after being asked several times by Sergeant White to do so. Also, as noted earlier, Turner failed to follow instructions when Sergeant White repeatedly asked Turner to surrender his right arm and Turner refused.
The court in Musacchia, supra at 292, stated the following:
Because we find the state proved all necessary elements of the greater charged offense of resisting a police officer with force or violence, the evidence was then clearly sufficient to support the jury’s verdict of the lesser responsive offense of attempted resisting a police officer with force or violence. In cases where the evidence at trial supports the greater charged offense but the jury returns a lesser responsive verdict, the Louisiana Supreme Court has recognized that such a result recognizes the legitimacy of a “compromise” verdict.
Because we also believe that the state proved all necessary elements of the greater charged offense, it is clear that the evidence in this case is sufficient to support the jury’s verdict of the lesser responsive offense. We thus find that reasonable jurors, viewing the evidence in a light most favorable to the prosecution, could have concluded beyond a reasonable doubt that Turner committed the offense of attempted resisting a police officer with force or violence.
As part of Turner’s sentence, the trial court required Turner to pay a fine of $750.00 or, in default of payment, spend six months in the parish jail. An indigent defendant may not be incarcerated because he is unable to pay a 11 afine which is part of his sentence. Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); State v. Monson, 576 So.2d 517 (La. 1991); State v. Kerrigan, 27,846 (La. App. 2 Cir. 04/03/96), 671 So.2d 1242. A defendant’s claim of indigence in such a situation may be discerned from the record. State v. Williams, 484 So.2d 662 (La. 1986); State v. Kerrigan, supra. This Court may choose to amend the defendant’s sentence. See State v. Tillman, 43, *611 569 (La. App. 2 Cir. 10/22/08), 997 So.2d 144, 149.
The record shows that Turner was and is an indigent. The trial court determined that Turner was an indigent prior to trial. Turner was represented at trial by the Indigent Defender’s Office and on appeal by the Appellate Project. Louisiana Code of Civil Procedure article 895.1 states:
B. When a court suspends the imposition or the execution of a sentence and places the defendant on probation, it may in its discretion, order placed, as a condition of probation, an amount of money to be paid by the defendant to any or all of the following: ***
Thus, this portion of Turner’s sentence shall be amended to state that the $750.00 fíne is imposed as a condition of his probation. As amended, we affirm the ruling and sentence of the trial court.
CONCLUSION
We find that the evidence was sufficient for a reasonable jury, viewing the evidence in a light most favorable to the prosecution, to find Turner guilty of attempted resisting an officer with force or violence. We respectfully amend the portion of Turner’s sentence which states that Turner shall pay a fine of $750.00 or spend six months in the parish jail in default of payment. Because it has been determined that Turner is an indigent, this |17portion of his sentence shall be amended to state that the fine of $750.00 is imposed as a condition of his probation. As amended, we affirm.
AMENDED AND, AS AMENDED, AFFIRMED.

. Sergeant White testified that he is six feet five inches tall, and weighs 480 pounds.

. Officer Harmon testified that he did not have a Taser, but only a can of pepper spray, which he did not have out at that time.

. Turner was ordered to have no contact with Ms. Gallow, to participate in a domestic abuse program, to work 12 eight-hour days of community service, and to pay a fine of $750.00.